## W. R. GRACE & CO. v. TOYO KISEN KABUSHIKI KAISHA.

(Circuit Court of Appeals, Ninth Circuit. May 10, 1926.)

No. 4715.

1. Evidence 413, 420(3)—Admitting testimony as to understanding of contracting parties concerning proposed route of vessel was not ingrafting parol condition on written contract, or varying terms of bill of lading by parol evidence.

In libel for loss of cargo by fire during alleged deviation from stipulated voyage, admitting testimony as to understanding of contracting parties concerning proposed route of vessel was not ingrafting parol condition on written

contract, or varying terms of bill of lading by parol evidence.

2. Shipping ⊜⟶125—Shipper, having knowledge that carrier had established certain port as regular port of call, must be deemed to have contracted with reference thereto, precluding recovery for cargo destroyed by fire during alleged deviation.

Where shipper knew that carrier had established certain port as regular port of call at time it shipped goods, it must be deemed to have contracted with reference thereto, precluding recovery for cargo destroyed by fire during alleged deviation.

Appeal from the District Court of the United States for the Third Division of the Northern District of California; John S. Partridge, Judge.

Libel by W. R. Grace & Co. against the Toyo Kisen Kabushiki Kaisha. Decree dismissing the libel (7 F.[2d] 889), and libelant appeals. Affirmed.

Harold M. Sawyer and Alfred T. Cluff, both of San Francisco, Cal., for appellant.

Thomas B. Dozier, Dozier & Dozier, and Dozier, Kimball & Dozier, all of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. Alleging deviation from the stipulated voyage the appellant brought a libel in personam against the appellee to recover $200,000 for loss of 2,500 tons of sodium nitrate, shipped from Iquique and Antofagasta for Honolulu on the Japanese steamer Tokuyo Maru. The steamer proceeded from port of shipment northerly to San Francisco, and thence to Portland, Or., where she received additional cargo for the Orient. Shortly after leaving the mouth of the Columbia river she was destroyed by fire and all cargo was lost. The appellant was the agent of the appellee, in charge of its shipping business at Iquique and Antofagasta. It also had a branch in San Francisco, where the appellee had its principal office for the Americas.

On January 14, 1921, the appellant's San Francisco manager wrote a letter to the San Francisco office of the appellee, confirming a telephone conversation for a freight engagement, and saying: "2,500 long tons nitrate of soda March shipment per Tokuyo Maru from nitrate port to Honolulu at $7 per ton." On the same day the appellant wrote to its Valparaiso branch that it had arranged shipment of the cargo on the Tokuyo Maru, scheduled to sail from nitrate port about the middle of March. The cargo was delivered to the steamer at Antofagasta and at Iquique, and upon receipt of the same the master issued its bills of lading, in both of which it was specified that the nitrate was shipped by the agents of the appellant on board the Tokuyo Maru "and bound for Honolulu." Upon the issues which were presented with an agreed statement of facts, the court below dismissed the libel.

The appellant contends that the bills of lading specifying the contract of affreightment from Antofagasta and Iquique "and bound for Honolulu" implied a shipment by the usual and customary route, which was northward to San Francisco and thence directly to Honolulu, and that to extend the voyage to Portland was an unwarrantable deviation. The evidence as to the usual and customary route was that the appellee had for several years maintained a regular fleet of steamers between the west coast of South America and Oriental ports, and that in sailing from Iquique and Antofagasta to the Orient all vessels proceeded first to San Francisco. It was shown that in 1918 the appellee's ships made six such voyages northward to San Francisco and thence eastward by Honolulu to home ports; that in 1919 there were six such voyages, and that in 1920 there were four, but in that year two of the vessels returned to the Orient by way of Portland; that in 1921, prior to the shipment here in question, two of the appellee's ships had made the return voyage, one by way of Portland, not touching at Honolulu, and one by way of Portland and Honolulu.

The appellee contends that the former customary route had been changed prior to the contract here in question, and that the last four of its vessels had returned to the Orient by way of Portland. It makes the further contention, which it relies upon, that it was clearly understood between the parties to the present contract that the Tokuyo Maru was to touch at Portland for cargo. It was shown that the appellee's line of vessels is subsidized by the Japanese government, by a subsidy act which requires it to get a permit from the minister of communication before it can add a port of call, and that on February 8, 1921, such permit was obtained, allowing the Tokuyo Maru to call at Portland; that the change of route to include Portland was extensively advertised in prints and by communications to the appellant; that on February 23, 1921, the appellee cabled the appellant's Valparaiso office, notifying it of the revision of the schedule of the Tokuyo's homeward voyage on account of the way call at Portland; that the appellant at Valparaiso

transmitted the cablegram to its agency at Iquique; and that on March 11, 1921, the appellee cabled the appellant to stow the nitrate in such a way as to permit loading wet lumber at Portland.

The appellant opposes to these facts the contention that such evidence is inadmissible to vary the terms of the written contract, or to show that the usual and customary route has been departed from, and insists that the obligation to follow that route was implied in the terms of the shipping contract, and it could not be altered or varied by parol evidence. Among the cases principally relied upon by the appellant are Babcock v. May, 4 Ohio, 335, and Leduc v. Ward, 20 Q. B. D. 475. In the first of these cases it was held that parol evidence is not admissible to prove a contract of affreightment different from that expressed in the bill of lading; that to do so is to ingraft a parol condition upon a written contract. In Leduc v. Ward the bill of lading described the vessel as "now lying at the port of Fiume and bound for Dunkirk." The vessel deviated from the direct route by making a passage to Glasgow, during which she was lost. Parol evidence was offered to show that the shipper, at the time of shipment, knew that the vessel was to go to Dunkirk by way of Glasgow, and consequently agreed to that course. The court denied the competency of such evidence. Lord Esher said of the bill of lading: "That writing is the only evidence of the contract. It can only be varied by showing a usage so general that it must be taken to be imported into the contract."

"Incidentally doubt was expressed of the correctness of the American case (Lowry v. Russell, 8 Pick. [Mass.] 360) holding that the shipowner may be allowed to prove that the shipper, when he received the bill of lading, knew that the ship was going to deviate from the usual course. That case is among those which are relied upon by the appellee herein. Another is Thatcher v. McCulloh, Fed. Cas. No. 13,862, Olcott, 365, holding that the presumption that goods are to be carried from one port to another by a direct voyage or by the usual course may be controlled by personal knowledge on the part of the shipper that a different course is to be pursued. To the same effect is Empire Trans. Co. v. Wallace, 68 Pa. 302, 8 Am. Rep. 178, where Judge Sharswood said: "It is well-settled elementary law that, in absence of any special contract the obligation of a carrier of goods is to transport them by the usual route proposed by him to the public, and it is well settled that a direct voyage to the destination indicated by the bill of lading is prima facie intended, but this may be controlled by usage or by personal knowledge of the shipper."

[1] We find it unnecessary to discuss the doctrine of those cases as related to the present controversy. As we regard the case at bar, to admit testimony as to the understanding of the contracting parties concerning the proposed route of the vessel was not to ingraft a parol condition upon a written contract or to vary the terms of the bill of lading by parol evidence. In Marx v. National Steamship Co. (D. C.) 22 F. 680, Judge Brown said: "In construing bills of lading, as in construing other commercial instruments, it is the right and duty of the court to look, not only to the language employed, but to the subject-matter, and to the surrounding circumstances, in order to determine the proper effect of the language used, by putting itself, so far as possible, in the place of the contracting parties. It has regard, therefore, to all the prevailing usages and customs of business."

It is to be conceded that, before a custom or usage in trade or business can acquire the force of law, it must appear that it is general and uniform, and for a long time has been recognized and acquiesced in, but as to the route of a steamship line it is obviously unnecessary, in order to acquire the force of law, that the custom or usage shall have been in existence for a long period of time. The exigencies of trade may require the owner of a steamship line to alter the route between its termini and establish a new course to be thereafter its regular and customary route, and in such event it necessarily follows that, from and after the time when the new route is established and by all available means published to the world, it is the usual and customary route as to all shipping contracts made between the owner and shippers who have knowledge of such change of route, and that all such shippers must be held to make their contracts with reference to the new route, and to accept it as implied in all bills of lading of goods to be carried between the termini.

[2] This is not to disregard the rule of Leduc v. Ward, supra, Babcock v. May, supra, and other cases in which attempt was made to avoid the purport of a bill of lading by proof of an oral agreement for deviation from the usual and customary voyage. Here there is no effort to prove a parol agreement for deviation. To all intents and purposes the usual and customary voyage from the Chilean ports to Honolulu in the case at bar was by

way of San Francisco and Portland. The appellee had established the port of Portland as a regular port of call on its line from Chilean ports to the Orient. The appellant knew that fact when it shipped the goods, and must be deemed to have contracted with reference to it.

The decree is affirmed.