## SMITH v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

## CATZ AMERICAN SHIPPING CO., Inc., v. SAME.

Circuit Court of Appeals, Second Circuit.
May 14, 1928.

Nos. 3, 4.

1. Shipping ⟐125—As respects shipment from San Francisco to Rotterdam, vessel held to have "deviated" by going first to Hamburg, notwithstanding liberty to call clause.

Vessel carrying cargo from San Francisco destined for Hamburg, Rotterdam, and Cardiff, which passed Rotterdam for Hamburg, intending to discharge the Rotterdam cargo on her return, *held* to have deviated, notwithstanding permission in bill of lading for it "to touch at any port or ports, in any rotation or order in, or out of, the customary route," such language not permitting vessel to pass beyond port of destination.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Deviation (in Law of Shipping).]

2. United States ⟐52½—Fleet Corporation may not be relieved of liability for loss of shipment through deviation on ground of agency for United States (Suits in Admiralty Act, § 2 [46 USCA § 742]).

Under Suits in Admiralty Act, § 2 (46 USCA § 742; Comp. St. § 1251¼a), permitting suits in personam against Emergency Fleet Corporation in cases where, if vessel owned by it were privately owned or operated, a proceeding in admiralty could be maintained, Fleet Corporation may not, on ground of being a public agent of United States, be relieved of liability for loss of goods through deviation of vessel.

3. Courts ⟐405(17⅛)—Question not covered by assignment of error and raised for first time in appellant's reply brief will not be considered by appellate court.

Question not presented to trial court, nor covered by any assignment of error, and first suggested in appellant's reply brief, will not be considered by Circuit Court of Appeals on appeal.

4. Shipping ⟐131—Interest on damages recovered for loss of shipment through deviation of vessel operated by Fleet Corporation is limited to 4 per cent. (Suits in Admiralty Act [46 USCA §§ 741–752]).

Shipper's remedy, provided by Suits in Admiralty Act (46 USCA §§ 741–752; Comp. St. §§ 1251¼–1251¼l), for loss of cargo because of deviation of vessel operated by United States Shipping Board Emergency Fleet Corporation, is exclusive in admiralty, and interest rate on damages recovered by shipper is therefore limited to 4 per cent.

Appeal from the District Court of the United States for the Southern District of New York.

Separate libels in personam by Jacob Telfair Smith and by the Catz American Shipping Company, Inc., against the United States Shipping Board Emergency Fleet Corporation for loss of cargo shipped on the steamship West Aleta, which stranded upon the coast of Holland in February, 1920, and became, with her cargo, a total loss. Liability was asserted on the ground of deviation. From a decree in favor of each libelant (2 F.[2d] 390), respondent appeals. Modified and affirmed.

Emory R. Buckner and Charles H. Tuttle, U. S. Attys., both of New York City (Arthur M. Boal, of Washington, D. C., and Walter Schaffner and Harold F. Birnbaum, both of New York City, of counsel), for appellant.

Barry, Wainwright, Thacher & Symmers, of New York City (John C. Prizer, of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. The steamship West Aleta was owned by the United States and was operated by the Emergency Fleet Corporation. Her fatal voyage commenced at Seattle, Wash., on December 19, 1919. She stopped at San Francisco, Cal., to take on additional cargo, whence she sailed on January 6, 1920, carrying cargo destined for Hamburg, Rotterdam, and Cardiff.

The Smith libel involves a quantity of bean oil shipped by the American Express Company at Seattle for carriage to Rotterdam. After loss of this cargo the owner as-

signed its claim against respondent to the libelant, Jacob Telfair Smith. The other suit involves a cargo of rice and nutmegs belonging to Catz American Shipping Company, Inc., which was taken on board at San Francisco and was consigned to libelant for delivery at Rotterdam. Both shippers received bills of lading, the material provisions of which will be mentioned hereafter.

On sailing from San Francisco the master of the West Aleta received orders to proceed to Hamburg as the first port of discharge, thence to Rotterdam as the second port of discharge, and finally to Cardiff. He proceeded in accordance with these orders, passed through the English Channel, and, passing by the entrance to the port of Rotterdam, proceeded toward Hamburg. When about 100 miles beyond the entrance to Rotterdam, the vessel stranded during a strong northwest gale on Terschelling Island, off the coast of Holland.

The bills of lading contained the usual exceptions that the carrier should "not be liable for loss or damage occasioned by causes beyond its control, or by the perils of the seas or other waters, * * * stranding, or other accidents of navigation of whatsoever kind. * * * " These exceptions were held to be nullified by the deviation of the vessel in passing beyond Rotterdam. Smith v. United States Shipping Board E. F. Corp. (D. C.) 2 F.(2d) 390.

[1] The principal question upon this appeal is whether the West Aleta deviated, with respect to Rotterdam cargo, in passing by Rotterdam for Hamburg, intending to discharge the Rotterdam cargo on her return. The ship relies upon the liberties clause of the bill of lading: "Received * * * to be transported by the ship West Aleta, now at or to arrive at the port of shipment, to be carried upon said vessel, * * * with leave * * * to touch at any port or ports, in any rotation or order in, or out of, the customary route and to call at any port or ports more than once, unto the port of Rotterdam."

It is clear from the authorities that clauses permitting deviation from the usual route of navigation have always been construed strictly and with reference to the particular voyage contracted for. See Scrutton on Charter Parties (12th Ed.) 297; 1 Arnould on Marine Insurance (11th Ed.) 575. The early case of Gairdner v. Senhouse, 3 Taunt. 16, construed the clause "to touch and stay at any ports and places whatsoever," but this was confined to the voyage insured, and was held not to justify a departure from the ordinary route. Later came Leduc v. Ward,

20 Q. B. D. 475, involving "with liberty to call at any ports in any order," and this likewise was limited to ports substantially on the course of the voyage. Glynn v. Margetson [1893] A. C. 351, applied the same canon of construction to "any port or ports, in any rotation." Such clauses relieve the ship of putting into ports along the customary route in their geographical order; but they do not permit a departure from that route. There are sound business reasons for limiting the general words of the liberty-to-call privilege to what is fairly applicable to the voyage agreed upon, and those reasons are well stated by Lord Justice Bowen in the case last cited, reported in [1892] 1 Q. B. 337, 342. The American cases are in accord with the British. Ardan S. S. Co. v. Theband, 35 F. 620 (D. C.); The Wells City, 61 F. 857, 858 (C. C. A. 2); Joyce on Insurance (2d Ed.), § 2396.

Finding that the "rotation" clause had been thus limited, shipowners sought greater latitude by adding "in or out of the customary route." This, of course, accomplishes something, and in The Blandon, 287 F. 722 (D. C.), was held to excuse a deviation to Philadelphia on a voyage from New York to Valencia. But this clause, like all the others, must, we think, be read as ancillary to the purposes of the voyage contracted for. It allows a ship to depart to some extent from the customary route between the termini of the voyage, but to allow her to pass the very terminus ad quem, and proceed to a port 250 miles beyond, would contradict the governing object of the contract, namely, the prosecution of the named voyage. Clearly, there must be some limit, or the voyage has no meaning, and the risk becomes indefinite. Persons dealing with the bill of lading, or insuring the cargo, do not expect the vessel to pass beyond the port of destination, and the liberty of doing so should not be read into the contract, unless granted in the clearest language. Where it has been expressly provided that the ship may go beyond, this has been allowed. The Emelia S. De Perez, 287 F. 361 (D. C.), affirmed 288 F. 1019 (C. C. A. 2). But no case, so far as we are informed, supports appellant's contention that the clause in question should be given an equally broad meaning.

On the contrary, the authorities sustain the decision of the District Court. United States Shipping Board E. F. Corp. v. Rosenberg Bros. & Co., 12 F.(2d) 721 (C. C. A. 9), is a holding on similar bills of lading issued for this very voyage. The Blandon, supra, is substantially in accord in holding that

the return of that vessel from Philadelphia to New York, the port of departure, was an unauthorized deviation. The Willdomino, 300 F. 5 (C. C. A. 3), affirmed 272 U. S. 718, 47 S. Ct. 261, 71 L. Ed. 491, held that a departure to North Sidney, Nova Scotia, was not within the clause when the voyage was from Messina to New York. The same clause was again involved in London-Savannah Naval Stores Co. v. South Atlantic S. S. Line (D. C.) 248 F. 949, reversed in 255 F. 306 (C. C. A. 5). There the respondent contracted to furnish cargo space for shipments from Pensacola, Fla., to Bristol, England. A tender which reserved the option of sending the vessels via a continental port was held a good offer of performance of the contract. The Circuit Court of Appeals in its opinion laid stress upon the fact that it had been "the almost unvarying practice" of vessels carrying naval stores from Gulf ports to Bristol to carry also other cargo and to stop at continental ports or other British ports before going to Bristol, and that the libelant had previously shipped goods under similar contracts with respondent on vessels which first stopped at a continental port. Other grounds of differentiation from the present appeal also exist; but, whatever may be thought of that case, it clearly is not a holding that under this clause a vessel may pass the harbor's mouth of its port of destination with the intention of later returning to discharge its cargo.

The other cases relied upon by appellant seem to us even more readily distinguishable. Evans Sons & Co. v. Cunard S. S. Co., 18 Times Law Rep. 374, involved a much broader liberty clause, including "first returning to * * * any port" in the Adriatic, Mediterranean, and other named waters "for the purpose of trading"; also the route taken was found to be the customary route. In The Frederick Luckenbach, 15 F.(2d) 241 (D. C.), the clause was also broader and more like that in The Emelia S. De Perez, supra. W. R. Grace & Co. v. Toyo, etc., Kaisha, 12 F.(2d) 519 (C. C. A. 9), decided merely what was the customary route.

The correctness of the interpretation we have adopted gains additional support, in our opinion, from "additional stipulation" No. 6 on the back of the bill of lading, which specifies the conditions under which the vessel may land the goods at a port other than that to which they are destined, "or retain same on board until the vessel's return trip." This provision as to retention of the goods until the return trip would seem surplusage, if the clause previously discussed gives a general liberty to carry them beyond the port of destination. This argument is alluded to in the Rosenberg opinion, supra. See, also, U. S. Shipping Board v. Bunge & Bern, 41 Times Law Rep. 73.

[2] The Rosenberg Case was reversed by the Supreme Court in an opinion handed down on February 20, 1928. 48 S. Ct. 256, 72 L. Ed. ——. The ground of reversal is that the suit was barred by the limitation contained in section 5 of the Suits in Admiralty Act (41 Stat. 525 [46 USCA § 745; Comp. St. § 1251¼d]). The opinion implies, though it does not decide, that the Fleet Corporation may be sued under the act upon its contracts. In the court below and in its brief filed in this court the appellant argued that it was acting as a public agent of the United States, and was not itself suable. We do not understand that this argument is now pressed; but in any event we think it clear that section 2 of the act (46 USCA § 742; Comp. St. § 1251¼a) permits a suit in personam "against such corporation" in cases "where if such vessel were privately owned or operated * * * a proceeding in admiralty could be maintained. * * *" Providence Engineering Corp. v. Downey Shipbuilding Corp., 294 F. 641 (C. C. A. 2); Dietrich v. United States Shipping Board E. F. Corp., 9 F.(2d) 733 (C. C. A. 2).

[3] With respect to the Smith suit the appellant contends that the libelant had no title to the cause of action, because the assignment to him was void under section 3477 of the Revised Statutes (31 USCA § 203). This question was not presented to the trial court, is not covered by any assignment of errors, and was first suggested in appellant's reply brief. Under these circumstances it is not properly before us. Virtue v. Creamery Package Mfg. Co., 227 U. S. 8, 38, 33 S. Ct. 202, 57 L. Ed. 393; Continental Public Works Co. v. Stein, 232 F. 559, 563 (C. C. A. 2). We feel the less reluctance in enforcing this rule against appellant, because it is our impression that the point is without merit, in view of the assimilation of the Fleet Corporation to the status of a private business corporation in the matter of suit.

[4] The decrees of the District Court allowed interest at the rate of 6 per cent. per annum upon the amount of damages sustained by the libelants. The opinion of the Supreme Court in the Rosenberg Case makes it clear that the remedy provided by the act is exclusive in admiralty. Consequently the rate of interest must be reduced to 4 per cent.

The decrees must be modified in respect to interest, and, as so modified, are affirmed.