**Albert P. DENIS and Denis Manufacturing Co.**

v.

**ELLIS, Inc.**

**Civ. A. No. 53–1009.**

United States District Court
D. Massachusetts.

Nov. 4, 1954.

W. R. Hulbert, Fish, Richardson & Neave, Boston, Mass., for plaintiff.

Harold E. Cole, Boston, Mass., of counsel, Judah B. Felshin, New York City, for defendant.

ALDRICH, District Judge.

This is a suit for the infringement of U. S. patent No. 2,510,622 in which the defendant, a vendor, has counter-claimed for a declaration of invalidity.

The parties will be referred to in their original capacities, the plaintiff in the singular, although actually there are two plaintiffs, the originator and owner of the patent, and the sole licensee and manufacturer.

brake cables. Beginning at least as early as 1920 the force applied by the driver to the brake pedal or handle was transmitted to its destination, the brake drums, by wire cables. With the advent of the hydraulic brake the use of cables for

June 6, 1950      A. P. DENIS      2,510,622

CABLE SHORTENING DEVICE

Filed April 3, 1948

INVENTOR.
Albert P. Denis
BY Harold E. Cole
Attorney

The individual plaintiff, for nearly fifty years, has been associated with the automobile business, principally in the repair and maintenance end. In this connection it came to his attention that there was a need for a mechanical device to take up slack in automobile

foot brakes was discontinued, but they are still used for hand brakes. Because of wear or stress during use brake cables sometimes need to be shortened beyond the limits of the brake adjusting device contained in the brake drum. For many years such shortening was effected by

removing the cable and tying a knot in it. The cable is heavy and stiff and hard to tie a knot in. The amount of shortening produced by a knot cannot be regulated, so that usually the exact amount desired will not be achieved. The knot method was very unsatisfactory, and an improvement was needed from the beginning. This finding is confirmed by the fact that the use of the knot, cheap as it is, was entirely discontinued when the first mechanical device appeared on the market.

This first device, hereinafter referred to as the semi-fixed device, appeared in the 1930's. (Exhibits 2 and 5.) It was, in effect, an insertable metal triangle with a fixed base, and partially adjustable apex around which the excess cable could be run, producing an indentation, or V, in an otherwise straight line, and thereby taking up slack. This was substantially better than the knot, but was still far from a perfect solution. The adjustment feature was only rough, and none could be made after the device had been installed. While it provided more variations than the knot, usually it was still necessary to readjust the brakes. Secondly, while the manufacturers of the semi-fixed device claimed that it could be installed without removing the cable, I find that this was difficult to do, and that the usual method was to disconnect one or both ends of the cable. Because of rust, etc., particularly in cars which had been used long enough to require this somewhat radical treatment, it was not always easy to do this.

In 1932 a patent was issued to one Suydam (No.1,957,367) for a mechanical automobile cable shortener that could be installed without removing the cable and that was adjustable after installation. I am unable to find that this device was marketed until the summer of 1948. In spite of these obvious advantages it never enjoyed any popularity and its sales were and are negligible. I find that this was due to the fact that during normal operation of the car when the brake was not in use, the cable would sometimes be slack, and this device might be shaken off, an obviously dangerous fault.

In May or June 1948, after nine months of cogitation and experimentation, the plaintiff developed the patented device in suit (Exhibit 10) and put it on sale. It was an immediate success, and largely captured the market. About September, 1953 the defendant's device was put on sale. It is conceded that the defendant's device is an infringement if the plaintiff's patent is valid, and I find that it was a substantial copy. The evidence was not in very satisfactory form, but so far as I am able I conclude that the plaintiff's device and the defendant's copy virtually control the national market, and that competition from other devices is sporadic and of no real commercial consequence. (I attach no weight to defendant's testimony that there are 45,000,000 "potential users" of brake cable shorteners.)

The defendant sought to show that its producing a copy of the plaintiff's device was an accident, and, indeed, a coincidence. The existence of a die originally made to manufacture a flat part for an aerial, which part could, by being bent in a U bend 180° be used as the principal component of the defendant's copy herein, namely, the housing, was a coincidence. The defendant's contention in the above regard requires a finding of further facts, however, and I do not so find.

I come now to a description of plaintiff's patent. The device looks something like a clam. The two shells, which are called the housing, are made up of one piece bent 180° in a U bend at the back where the clam's hinge would be. The shells are held ¼" apart at each outer corner by a rivet. A bulge, or groove, in each shell makes the surfaces further separated at the center. This groove runs from the outer edges nearly to the back. At the back is a hole. The threaded end of the shank of a hook protrudes through this hole, and the hook itself passes up the grooves and protrudes between the outer edges or mouth. The hook may be drawn down inside the housing by tightening a nut outside the hole.

In operation the mouth of the device is laid against a cable at right angles to the rivets, and the hook slipped over the cable. The hook is then drawn down in, causing the device to swallow a portion of the cable, making an adjustable, but permanent, V in it.

The idea of making a V to take up slack in a wire or cable by an adjustable hook pulling in one direction, while two fixed points (here the rivets) on either side in effect apply pressure in the opposite direction, is far from novel. The question for decision is this: is a mechanical method of doing this which is a marked practical improvement on any method previously devised a patentable invention?

Before dealing with this question it is necessary to refer to one additional matter. The plaintiff claims that the housing of his device is stronger than a flat housing by reason of the corrugation, bulge, or groove on each side, and its relationship with the hook. While this bulge was shown in the patent, I find, if material, that the device actually sold by the plaintiff is an improvement on his patent. The plaintiff testified that if by reason of stress the hook in his device were to fail, it would spread against this groove and receive reinforcement from the housing, and that, conversely, if the housing were to fail, that is, commence to collapse, the groove would come up against and receive support from the hook. No claim of these advantages is contained in the patent, nor do the specifications call for a device in which those advantages would necessarily be inherent, although plaintiff so contended before me. Plaintiff testified that defendant's hook was made out of weaker metal, which fails in such a manner as not to receive support from the housing. It seems to me that this fact alone refutes plaintiff's contention that this particular strength advantage is inherent in his patent. Even without this testimony I would draw an inference unfavorable to the plaintiff for several reasons, notably the absence of any stated allowances, and the different shape of the bulge shown in the specifications. I find that the bulge is of importance, but not because it reinforces the hook, and vice versa.

I attach no significance to this factor for another reason, namely, there is no evidence which satisfies me that this added feature is of any commercial importance. While I believe that plaintiff's device has this added strength, it does not appear that without it the device would fail in the use for which it was intended.

I do believe, however, that plaintiff has produced a device capable mechanically, by reason of general strength, simplicity, and efficiency, of doing what no previous device could do. It is small and uncumbersome. It is readily adjustable. It can be installed easily without removing the cable. It will not shake off. I find further that there has been a need for such a device for over twenty years.

The parties are far apart on their views. The plaintiff asserts that the device in question is the clearest kind of an example of invention, while the defendant contends that there is no glimmer of inventiveness. Having examined the cases cited by each, and a number more, I cannot agree with either. On the whole, however, even without giving effect to any presumption based on the issuance of the patent, I think the plaintiff has the better of the argument. I am struck with the strength, simplicity and compactness of the plaintiff's shape, which, while it selects and incorporates many things, I feel adds up to something better, and constitutes more than a matter of mere mechanical improvement over the known art. I am particularly impressed with the way in which the plaintiff has met the needs of the occasion, not just in creating an adjustable device, of which there have been many, but one that is readily installed and cannot possibly shake off.

The defendant, pointing to the prior art from which plaintiff in part culled, says that his result is obvious, rather than novel. This easy contention would be more appealing had the plaintiff's de-

vice appeared twenty years ago. It seems to me it is to be discounted by the length of time that the demand has existed unfulfilled. It also is appropriate to observe that the defendant copied almost exactly the plaintiff's device, rather than any of the others, even when it risked the fact that the plaintiff's was substantially the only one subject to an existing patent.

Perhaps none of these elements standing alone is enough. Cf. McCord Corp. v. Beacon Auto Radiator Co., 1 Cir., 193 F.2d 985, 989. But cf. Safety Car Heating & Lighting Co. v. General Electric Co., 2 Cir., 155 F.2d 937, 939. Cumulatively they lead me to the determination that the patent is valid. Filtex Corp. v. Atiyeh, 9 Cir., 1954, 216 F.2d 443.

The plaintiff will submit a form of decree.