**Fred LEINER**

v.

**UNITED STATES.**

No. 576-57.

United States Court of Claims.
Oct. 8, 1958.

---

15. This holding is not inconsistent with Moser v. United States, 1914, 40 Ct.Cl. 285.

James H. Heller, Washington, D. C., for plaintiff. Dickstein, Shapiro & Friedman, Washington, D. C., were on the briefs.

Edward Brodsky, Brooklyn, N. Y., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LITTLETON, Judge.

Plaintiff, a postal employee, sues to recover back pay from July 12, 1954, the date on which he was suspended from his position in the Post Office Department, to September 7, 1956, the date on which he received the offer of reinstatement,[1] on the ground that under applicable statutes he is entitled to such pay.

On July 12, 1954, plaintiff was suspended from his position in the Post Office Department. On July 20, 1954, he was given a statement of charges and a notice of proposed removal action in which it was said that the Postmaster General was proceeding under the provisions of the Act of August 26, 1950, 64 Stat. 476, 5 U.S.C.A. § 22–1 et seq. This statute provides, among other things, that certain designated heads of departments and any others to whom the President might grant such authority,[2] may in their "absolute discretion and when deemed necessary in the interest of national security, suspend, without pay, any civilian officer or employee" of their respective departments. The act further provides that the agency head may, after such investigation and review as he deems necessary, terminate the employment of the suspended employee "whenever he shall determine such termination necessary * * * in the interest of national security of the United States." The law provides that such determination by the agency head shall be final. It further provides as follows:

"* * * any person whose employment is so suspended or terminated under the authority [of this Act] *may*, in the discretion of the agency head concerned, be reinstated or restored to duty, and if so reinstated or restored *shall* be allowed compensation * * *" [Italics supplied.]

The statement of charges preferred against plaintiff stated that plaintiff's retention was not "clearly consistent with the interests of national security" and it specified seven particulars in which it was not consistent. Thereafter, on December 3, 1954, plaintiff's case was heard by a Security Hearing Board of three members which decided that, contrary to the statement of the Postmaster Gen-

1. The offer of reinstatement and the instructions relative to the preparation of plaintiff's claim for back pay specified that the dates for such pay claim should be from the date of suspension to the date of receipt of the letter offering reinstatement.

2. By Executive Order 10450, 18 Fed.Reg. 2489, 5 U.S.C.A. § 631 note, Section 3 of the 1950 Act was invoked to include all executive departments of the Federal Government, including the Post Office Department.

eral, plaintiff's employment was consistent with the interests of national security as long as plaintiff was employed in a non-sensitive position. By letter dated December 28, 1954, the Board so advised the Post Office Department. The Postmaster General, however, proceeded on August 15, 1955, to remove plaintiff from his employment pursuant to the July 20, 1954, letter which had stated the charges against plaintiff and had based the proposed removal action upon section 22–1 et seq.

In the meantime, i. e., on May 28, 1954, the suit of Cole v. Young was commenced in the United States District Court for the District of Columbia. Cole was a government employee who had also been suspended and discharged from a non-sensitive position in a government agency. On October 26, 1954, the District Court rendered a decision adverse to Cole (125 F.Supp. 284), which decision was, on July 28, 1955, affirmed by the United States Circuit Court of Appeals for the District of Columbia Circuit, 96 U.S. App.D.C. 379, 226 F.2d 337. As noted above, the employment of the instant plaintiff, Mr. Leiner, was terminated on August 15, 1955. On October 11, 1955, plaintiff commenced his suit for reinstatement in the District Court, Leiner v. Summerfield, Civil Action No. 4473–55. Plaintiff herein was represented by the same attorneys who represented Mr. Cole. On November 21, 1955, the Supreme Court granted certiorari in the case of Cole v. Young, 350 U.S. 900, 76 S.Ct. 181, 100 L.Ed. 791. On December 10, 1955, a request of the Department of Justice for an extension of time to file an answer in Leiner v. Summerfield, was extended to January 11, 1956. On June 11, 1956, the Supreme Court rendered a decision favorable to Cole in Cole v. Young, 351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396, and on July 6, 1956, the time for rehearing and for withholding of the Supreme Court mandate expired. On July 31, 1956, the attorney for the plaintiff herein was advised by attorney for the United States in Leiner v. Summerfield that the Department of Justice would advise the Post Office Department that Mr. Leiner could be reinstated in view of the decision of the Supreme Court in Cole v. Young.

On September 5, 1956, the plaintiff was offered reinstatement to his position in the Post Office Department. In the letter offering plaintiff reinstatement he was advised that in view of the decision of the Supreme Court in Cole v. Young, supra, it had been concluded that since plaintiff occupied a position which had not been designated as "sensitive", Executive Order 10450 and section 22–1 of the 1950 Act were not legally applicable to his case. The letter advised plaintiff how to prepare a claim for back pay, stating that the dates for such pay claim should be figured from the date of suspension to the date of receipt of the letter offering reinstatement. Plaintiff received the letter on September 7, 1956. He was reinstated and restored to duty on September 11, 1956. Thereafter on September 17, 1956, plaintiff submitted his claim for back pay to the Post Office Department which forwarded the claim to the Comptroller General in January, 1957. On November 8, 1957, the Comptroller General denied the claim for back pay and plaintiff brought this suit on December 16, 1957. On February 14, 1958, defendant filed its answer which included, among other things, the defense of laches. For reasons which are obvious from a study of the above sequence of events, defendant has now abandoned that defense.

As we have seen, section 22–1 of the Act of August 26, 1950, provides that any person whose employment is suspended or terminated under the authority of that section and who is reinstated by the head of the employing agency, *shall* be paid back pay. The plaintiff was suspended, and later removed, by written communications expressly based upon the authority granted to the Postmaster General by section 22–1. Plaintiff was later restored to duty. Without more, his case would seem to fit the statute and his entitlement to receive the back pay appears clear.

The Government says, however, that the plaintiff's case is not covered by the statute because, although the Postmaster General purported to remove plaintiff "under the authority of" section 22–1, that statute did not give the Postmaster General the authority which he assumed. Cole v. Young, supra, decided that section 22–1 was not applicable to employees who did not occupy "sensitive" positions, hence, the Government urges, the assumed authority herein was in fact nonexistent, and therefore the back pay proviso, applicable to a person whose employment is suspended or terminated "under the authority of" section 22–1 is not applicable to this plaintiff. If the Government's concept of the narrow scope of authority granted to the agency heads in the 1950 act is valid and is carried to its logical conclusion, it is difficult to conceive of a case where a reinstated employee might recover the back pay provided for in the statute. On the other hand, it might seem to follow, from the Government's argument, that the Postmaster General's purported suspension and later discharge of the plaintiff were, because of absence of authority in him to do what he purported to do, null and void and the plaintiff was never separated from his employment as a matter of law. The plaintiff does not so claim, and we do not consider further that possible theory of recovery.

Did Congress, in the proviso granting back pay to employees removed and later restored by personnel action related to this security statute, mean that if the department head should later, persuaded by a decision of the Supreme Court, conclude that he had misconstrued the statute, and therefore should reinstate the employee, and did so, the employee should not get back pay? We are of the opinion that Congress had no such intention. We think that in this remedial provision Congress could not have intended to draw so fine a line. Congress recognized that

the statute, lodging arbitrary and final power in department heads, was a departure from normal Government personnel practice, justifiable only in the interest of national security. It tempered the severity of the statute by granting discretion to the department heads to right possible wrongs committed under the statute by ordering reinstatement. Then it made mandatory the payment of back pay to such reinstated employees. If the Postmaster General had followed the decision of the Security Hearing Board in the first place and had reinstated the plaintiff because his job was not a "sensitive" one, plaintiff would, of course, have received his back pay under the statutory provision in question. When the Postmaster General, a year later, did the very same thing because of the Supreme Court's decision in Cole v. Young, he was correcting an error. The error had been regarded by the Security Hearing Board as an error of judgment, an over-zealous application of the security law. The Supreme Court decided that a similar error by another department head was an error of law. We think Congress did not intend, in the remedial provisions of the statute, to draw a distinction between the two kinds of errors.

The plaintiff has urged as an alternative ground of recovery the provisions of the Lloyd-Lafollette Act as amended by the Act of June 10, 1948, 62 Stat. 354, 5 U.S.C.A. § 652(b) (1), and certain Civil Service Regulations in effect at the time of his suspension. The Government says that because the plaintiff was an "indefinite substitute clerk" he had no rights under the cited act.[3] The question whether indefinite appointees, probational appointees, appointees subject to investigation, etc., are in the "classified civil service" or have "competitive status" within the meaning of the statutes and regulations is often a perplexing one. We have, whenever it has been necessary, addressed ourselves to the problem and solved it as best we could.

---

3. Plaintiff points out that prior to his suspension he had successfully completed his probationary period although the 18 month period of investigation during which time the Civil Service Commission might order his removal, had one month to run.

But it is not a problem which we will undertake as a work of supererogation. The reinstatement and back pay provisions of the Act of August 26, 1950, apply to all types of Government employees.

Plaintiff is entitled to recover and his motion for summary judgment is granted. Defendant's motion for summary judgment is denied. Judgment will therefore be entered to that effect with the amount of recovery to be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.