LittletoN, Judge,
delivered tbe opinion of the court:
This is an action for the recovery of certain sums of money for annual leave, in-grade increases, and increases under & legislative pay act.
The plaintiff herein had been employed with the Federal Government from 1938 until April 2, 1954. On that date,, he was suspended from his position in the Treasury Department pursuant to Executive Order 10450 and the Act of August 26,1950, 64 Stat. 476, 5 U. S. C. 22-1, which provides for the summary suspension or removal of an employee when the agency head determines that such action is “necessary or advisable in the interest of the national security of the United States.” On June 23,1954, the plaintiff was removed from his position, and at that time was paid a lump-sum amount for his accumulated annual leave as of January 1, 1954. The plaintiff was not paid for the 48 hours of annual leave which he had accrued between January 1, 1954 and April 2, 1954, the date of his suspension, because such accrued leave was in excess of the amount he was permitted to accumulate under the leave statute.
The plaintiff was restored to duty on January 27, 1956 and was given as “back pay” a sum representing the salary he would have earned during the period of his suspension and removal computed at the rate applicable to his grade on the date of his suspension. This sum did not include any in-grade increases which the plaintiff might have become entitled to during the period of suspension and removal had he remained on the job, and it did not include a 1955 statutory increase in the pay of the grade held by the plaintiff at the time of his removal. At the close of business on the date of his reinstatement, i. e., January 27, 1956, the plaintiff resigned from his Government position. He was paid for that one day at the new rate applicable to his grade as increased by the Federal Employees’ Salary Increase Act of 1955, 69 Stat. 172. He was not credited with any annual leave for the nearly two years during which he was suspended, or removed from his position and was, therefore, not given any lump sum payment for the leave he would have earned, during that period had he not been suspended and removed-He was not paid for the 48 hours leave accrued from January *488 1, 1954 to April 2, 1954. Wlien the plaintiff’s claims for additional “back pay” and for the payment of a lump sum for annual leave covering the period from January 1, 1954 to April 2, 1954 and covering the period of suspension and removal were denied him by the employing agency, the plaintiff brought this suit.
The plaintiff’s claim for in-grade increases and the increased rate under the above Salary Increase Act is based upon the language of the Act of August 26, 1950, supra, under which he was removed and subsequently restored to duty and which he says embodies a new concept of “normal earnings.” That act gives the agency head the discretion to reinstate or restore an employee who has previously been summarily removed thereunder, and provides for compensation upon such reinstatement or restoration. Section 1 of that Act which the plaintiff says creates this concept of “normal earnings” reads as follows:
* * * any person whose employment is so suspended or terminated under the authority of said sections * * * may, in the discretion of the agency head concerned, be reinstated or restored to duty, and if so reinstated or restored shall be allowed compensation for all or any part of the period of such suspension or termination in an amount not to exceed the difference between the amount such person would normally have earned during the period of such suspension or termination, at the rate he was receiving on the date of suspension or termination, as appropriate, and the interim net earnings of such person: * * *. [Italics supplied].
The plaintiff says that had he not been suspended and removed, he would have normally received the in-grade increases and the increased salary rate, and that, therefore, he is entitled to these amounts under the language of this statute.
No cases have been decided on the precise issue raised in the instant case. Those cases cited by the parties arose under section 6 of the Lloyd-LaFollette Act, as amended in 1948, 62 Stat. 354, 5 U. S. C. 652. Section 6 of the 1948 amendment to the Lloyd-LaFollette Act provides for back pay for an employee who has been reinstated or restored on the basis that his suspension, or removal was unwarranted and un] us- *489 tified, but limits the amount which may be paid thereunder. The pertinent part of that section reads as follows:
Any person removed or suspended without pay * * * who * * * is reinstated or restored to duty on the ground that such removal or suspension was unjustified or unwarranted, shall he ‘paid compensation at the rate received on the date of such removal or suspension, for the period for which he received no compensation with respect to the position from which he was removed or suspended, less any amounts earned hy him through other employment during such period, and shall for all purposes except the accumulation of leave he deemed to have rendered service dwri/ng such period. [Italics supplied].
It is true, as the plaintiff points out, that the above-quoted provision does not contain any language to the effect that the amount of compensation to be paid shall be that which a person “would normally have earned” as does the Act of August 26,1950, supra. However, the significance which the plaintiff would give to the expression “would normally have earned” under the 1950 Act disregards and renders a nullity the remainder of the phrase which states “at the rate he was receiving on the date of suspension or termination.” The only other possible construction which can be given to the language “would normally have earned * * *, at the rate he was receiving on the date of suspension or termination” which would favor the plaintiff’s position would be to construe it as meaning “at the rate applicable to the employee’s Civil Service classification grade throughout the period of suspension or removal.” There is nothing either in the language of the 1950 Act or in the legislative history of the Act or its predecessor statutes which indicates that Congress was referring to the rate applicable to a Civil Service classification grade as that rate might be changed by statutes passed during a period of suspension. The word “rate” as used similarly in the back-pay provisions of the 1948 amendment to the Lloyd-LaFollette Act has been treated by this court as meaning the dollar pay rate applicable to the particular plaintiff on the date of the suspension or removal. Green v. United States, 124 C. Cls. 186; O'Brien v. United States, 124 C. Cls. 655; Jeffrey v. United States, 127 C. Cls. *490 231; O'Brien v. United States, 138 C. Cls. 296. Such an interpretation of the word “rate” as used in the Lloyd-La-Follette Act amendment has apparently been acquiesced in by Congress, since the provision has not been changed since its enactment in 1948. We conclude that the word “rate” as used in the 1950 statute also refers to the dollar pay rate applicable to the employee on the date of suspension or removal.
The plaintiff places reliance on Crocker v. United States, 130 C. Cls. 567. The claim in that case did not arise under the Act of August 26,1950, which is involved in the present litigation, nor did it arise under section 6 of the 1948 amendment to the Lloyd-LaFollette Act, since in that case Crocker was not restored or reinstated. The claim in the Crocker case arose under a regulation of an executive department and it was held that Crocker was entitled to recover his Civil Service pay because of an executive official’s arbitrary refusal to reinstate the plaintiff in compliance with a Civil Service regulation which, if complied with, would have resulted in his reinstatement. Inasmuch as the plaintiff’s right to “back pay” in such a case is not limited by any statute to less than he would have normally received had he been working during the period of wrongful suspension or removal, the court held that the plaintiff was entitled to recover all that he would have earned, including legislative pay increases and in-grade increases. The plaintiff herein attempts to bring his case within the Crocker rule by asserting that his suspension was in fact unlawful. The record in this case does not establish that his suspension was unlawful, and such a finding is not a prerequisite to his right to recover back pay under the Act of August 26, 1950. See O’Brien v. United States, 124 C. Cls. 655.
As we stated earlier, there are no cases in which the court has passed on a claim arising under this portion of the Act of August 26, 1950 and we must accordingly construe the language of that act to determine the plaintiff’s rights thereunder.
The language of the Act of August 26, 1950 was derived from earlier statutes providing for summary removal of employees in the interest of national security, such as the *491 Act of June 28,1940, 54 Stat. 676, 679, which provided that Civil Service employees of the Army, Navy, and Coast Guard could be summarily removed for national security reasons and that section 6 of the 1912 Lloyd-LaFollette Act should not apply to these persons. Section 6 of the 1940 Act permitted reinstatements in the discretion of the appropriate Secretary and allowed compensation upon such reinstatement. The measure of such compensation was to be as follows:
* * * and if so reinstated shall be allowed compensation for the period of such removal at the rate they were receiving on the date of removal: * * * [Italics supplied].
This section did not provide for deductions of compensation received from other sources during the period of removal. This provision was to expire on June 80,1942. In December of 1942, Public Law 808, 56 Stat. 1053, reenacted the above provision of the 1940 Act as section 3 of the new act, but with an amendment to “qualify and limit conditions of reimbursement to persons removed under the authority of section 3 when subsequent investigation has warranted their reinstatement.” See H. Kept. 2511, 77th Cong., 2d Sess. The provision as amended reads as follows
* * * may, in the discretion of the Secretary concerned, be allowed compensation for all or any part of the period of such removal in an amount not to exceed the difference between the amount such person would normally have earned during the period of such removal, at the rate he was receiving on the date of removal, and the interim net earnings of such person: * * * [Italics supplied].
We see from this that the language, “amount such person would normally have earned during the period of such removal” came into existence in 1942 in an attempt to “qualify and limit” the conditions of reimbursement to employees subsequently restored to duty. For the first time a provision for deduction of interim earnings was inserted into the statute. We see from this that Congress desired to limit the amount of money which a reinstated or restored employee could recover. There is no indication from this legislative history *492 that Congress was, on the one hand, limiting the amount of recovery by deducting interim wages, and, on the other hand, extending the amount of recovery by incorporating a new concept of “normal earnings.” While the 1942 Act is discretionary as to the allowance of compensation, the 1950 Act made compensation upon restoration mandatory, but the method by which the compensation was to be computed is the same under both acts. The language of the 1950 Act was, then, not new language, but originated in the 1942 statute quoted above, and the provision is not a new concept coming into existence after the enactment of the 1948 amendment to the Lloyd-LaFollette Act and thus to be construed differently, as the plaintiff would have us believe.
The question remains as to what 'Congress did mean by the phrase, “amount such person would normally have earned.” To properly construe this back pay provision, we must read the section as a whole, and we cannot disregard the next phrase, “at the rate he was receiving on the date of suspension or termination.” When the two phrases are read together, it is clear that Congress intended to reimburse the restored employee for the amount he would normally have earned, but that the amount he would normally have earned is to be computed by and limited to the “rate he was receiving on the date of suspension or termination.” We are of the opinion that the 1950 Act set forth a formula for the computation of the back pay which a person might receive thereunder and under that formula, as clearly indicated in the statute, a reinstated employee such as the plaintiff was not entitled to receive the benefit of in-grade increases or legislative increases during the period of his suspension or termination. We conclude that the plaintiff has received the proper amount of back pay under the provisions of the 1950 statute.
We must now consider the question of annual leave. Unlike section 6 of the 1948 amendment to the Lloyd-LaFol-lette Act which expressly excludes the accumulation of leave during the period of suspension or removal, the Act of August 26, 1950 under which this plaintiff is claiming does not prohibit accumulation of leave during such period, and *493 it has been administratively determined that leave must be credited for such period. 31 Comp. Gen. 58, 32 Comp. Gen. 284. This plaintiff normally would have been credited with annual leave for the period from April 2, 1954 to January 27,1956. This was not done in the instant case, because, at the time of the plaintiff’s suspension and later termination from his employment in 1954, he had already accumulated leave up to the amount of his individual “ceiling” as provided for under sections 2062 (c) and 2066 (a) of Title 5 of the United States Code. The Comptroller General has held that leave to be credited for a period of suspension or termination under the Act of August 26, 1950 is subject to the maximum accumulation limitation of these sections. 35 Comp. Gen. 121, 123. Therefore, this plaintiff was not, upon his restoration to duty, credited with the 48 hours of leave already accrued in excess of this “ceiling”, and that leave which would have accrued to him after April 2, 1954 had he not been suspended and terminated from his position.
Had the plaintiff not been suspended and terminated from his position, he no doubt would have used his 48 hours of leave already accrued as of April 2, 1954, would have, as permitted by law, taken any excess leave to bring himself within the ceiling set by the leave statutes, and would have used his current leave as it accrued in 1954 and 1955. He would have had both the pay which he has now received as “back pay” and the benefit of the leave. Had the plaintiff remained on duty, he would have had to take his leave or forfeit it, but we should assume that he would have taken it. We cannot give the plaintiff the leave, but we can give him the money equivalent of it.
As we have said, the plaintiff would have received both his pay and the benefit of his leave if he had not been suspended and terminated from his employment. We are of the opinion that the plaintiff is entitled to both the back pay and the benefit of his leave. A refusal to credit the plaintiff with leave which would have accrued to him in 1954 and 1955, because he already had the maximum amount of leave accumulated at the time of his suspension and termi *494 nation, requires a presumption that the plaintiff would not have taken his leave during 1954 and 1955 even if he had not been suspended or terminated and would have allowed the leave to be forfeited. We do not believe we can make such a presumption. We are of the opinion that permitting the crediting of leave to the plaintiff even though it exceeds his individual “ceiling” does not violate the Congressional intent in placing a “ceiling” upon the accumulation of leave. The purpose of the statutory ceiling on accumulated leave was to encourage Government employees to take their leave as it accrued within certain limits, in order that the employees might have the benefit of regular vacations and the employing agencies might not accrue large obligations for unpaid leave as had been necessary during the war period when it was not in the national interest to permit employees to take all of their annual leave. See Senate Report No. 294, 83d Cong., 1st Sess. This policy of limiting leave accumulations was not intended to cover employees who, because of their suspension or termination under the Act of August 26, 1950, could not possibly use their annual leave in conformity with this policy.
We conclude that the plaintiff is entitled to be credited with the leave which he would have earned and used during the period of his suspension and termination had he not been suspended and terminated. This will result in the plaintiff’s receiving an amount equal to the compensation he would have received had he remained in the Government service after January 27,1956 (the restoration date) until the expiration of the annual leave to which we hold he was entitled. 58 Stat. 846, 5 U. S. C. 61 (b) (1952 ed.). The amount of recovery will be determined in further proceedings pursuant to Rule 38 (c). The petition, insofar as it relates to in-grade and statutory salary increases, is dismissed.
It is so ordered.
Reed, Justice {Bet.), sitting by designation; Maddek, Judge, and JoNes, Ohief Judge, concur.
• Whitaker, Judge, took no part in the consideration and decision of this case.
*495 FINDINGS OF FACT
The court, baying considered tbe evidence, the report of Commissioner Currell Vance, the briefs and argument of counsel, makes findings of fact as follows:
1. During all the times mentioned herein, plaintiff was and now is a citizen of the United States, residing in Arlington, Virginia. He now maintains law offices in the District of Columbia.
2. Plaintiff is a former employee of the United States Treasury Department. Such employment commenced in 1938, terminated January 27, 1956, and was continuous except for a period of suspension and removal hereinafter noted.
3. On April 2,1954, plaintiff was suspended from his position in the Treasury Department on the basis of certain written charges, pursuant to Executive Order 10450 and the Act of August 26, 1950, (P. L. 733), 64 Stat. 476.
4. On June 23,1954, the Secretary of the Treasury ordered the removal of plaintiff from his position (under the Act of August 26, 1950 and Executive Order 10450), and plaintiff was so removed. At that time he was paid for his annual leave as of January 1,1954.
5. On January 27, 1956, the Treasury Department announced that “After careful review of the entire record, both procedural and substantive, it was determined to restore Mr. Hynning to duty.”
6. By letter dated January 27, 1956, plaintiff accepted his restoration and tendered his resignation. As hereinafter noted, such resignation was accepted on the same date.
7. On February 18, 1956, the Treasury Department paid plaintiff the gross sum of $18,055.02 as “back pay” for the period of his suspension and removal, the detailed computation of which amount is hereinafter noted.
8. On June 6, 1956, plaintiff made written claim on the Treasury Department for certain additional amounts, which was refused, based on rulings of the Comptroller General.
9. Mr. Hynning was suspended on April 2,1954. He was *496 restored on January 27,1956. ' He resigned effective January 27, 1956. His restoration to duty was made effective as of the beginning of business on the 27th, and his resignation was made effective as of the close of business on the 27th. He was administratively put on annual leave for the 27th.
10. On the date of suspension Mr. Hynning was receiving compensation at the rate of $9,800 a year. He was allowed compensation at this rate up to January 27, 1956, which amounts to $17,903.52. For January 27 he was allowed compensation at the rate of $10,535 a year (the compensation of his grade as increased by the Federal Employees’ Salary Increase Act of 1955), which amounts to $40.48. The total gross compensation allowed, exclusive of leave adjustments, was therefore $17,944.
11. At the time of his suspension Mr. Hynning had to his credit 413 hours of annual leave brought forward from prior years, plus 48 hours earned up to April 2 in the calendar year 1954. However, Treasury Department construed the law (5 U. S. C. 2062 and 2066) as limiting the amount of accumulated leave, for which an employee may be paid a lump sum, to the amount which he had at the end of 1952, less leave used annually thereafter in excess of the amount earned annually, or to 240 hours, whichever is greater. Mr. Hynning therefore was not credited, for lump-sum payment purposes, with the unused leave earned in 1954 and 1955. Since he was administratively placed on annual leave for January 27, 1956, he was entitled to one day of leave earned in 1956 for this purpose. He was therefore credited upon resignation to a lump-sum payment for 413 hours of leave, plus 8 hours for one holiday occurring within the period over which this accumulated leave was projected for purposes of computing the lump-sum payment. The lump-sum payment was computed at the rate of $10,535 a year, which is the rate at which Mr. Hynning was paid when he resigned, and amounted to $2,132.21. Since upon his termination on June 23,1954, he received a lump-sum payment of $2,021.19, a balance of $111.02 was allowed. The total gross compensation allowed was therefore $18,055.02.
12. From the compensation covering the period April 2, 1954, through January 27, 1956, deductions of $1,076.86 *497 were made for contributions to the Civil Service Ketirement System.
13. Under section 3402 of the Internal Eevenue Code of 1954 there is required to be withheld tax equal to 18 percent of the amount by which the gross compensation exceeds the product of the number of withholding exemptions claimed multiplied by the amount of one exemption. Mr. Hynning has claimed 3 withholding exemptions. The amount of one withholding exemption is $1.80 times 666 (the number of days in the period with respect to which the compensation is paid), or $1,198.80. Tax withheld is therefore 18 percent of $14,458.62 ($18,055.02 less the product of 3 times $1,198.80), or $2,602.55.
14. The Federal Employees’ Group Life Insurance Act (5 U. S. C. 2091-2103) provides that “all employees eligible under the terms of this Act will be automatically insured thereunder commencing on the first day they become so eligible.” The Act further provides that during any period in which an employee is insured there shall be withheld from his salary premiums in an amount not to exceed the rate of 25 cents biweekly for each $1,000 of his group life insurance; regulations provide that full withholding must be made for each pay period even if an employee was in pay status for only part of the period. Mr. Hynning did not first become eligible for insurance until January 27, 1956, and accordingly there is no withholding for the period prior to that time. Since he did not give the prescribed notice that he did not desire to be insured on January 27, he was insured for that day, and $2.75 is required to be withheld for his $11,000 of insurance. This entitles him to the conversion privileges provided in the law.
15. Mr. Hynning filed with Treasury a statement under oath indicating that he had no interim net earnings.
16. Based on these computations Mr. Hynning has been allowed compensation in the amount of $14,372.86. A tabulation showing in detail the amounts which have been paid administratively to the plaintiff is in evidence as a part of the agreed statement of facts of the parties, as contained in the Commissioner’s memorandum of pretrial conference.. *498 A recapitulation of such computations allowed plaintiff upon his restoration is as follows:
Base compensation April 2, 1954 through January 27, 1956_$17,944.00
Plus lump-sum leave adjustment_ 111. 02
Gross compensation_ 18, 055.02
Less:
Retirement deduction_$1,076.86
Tax withheld_ 2,602.55
Federal Employees’ Group Life Insurance _ 2.75
Total deductions_ 3,682.16
Net compensation_ 14,372.86
17. Upon the reinstatement or restoration of plaintiff to duty in the Treasury Department on January 27,1956, it was defendant’s intention to restore plaintiff whole, as if he had never been suspended or removed, to the fullest extent permitted by law, including the Act of August 26, 1950, the various leave statutes, and the Salary Increase Act of 1955. By reason of his removal, plaintiff was prevented from taking any annual leave currently during such period, and he was also prevented from taking any annual leave to reduce his accumulated leave to an amount below the statutory ceiling.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover on his claim for additional lump-sum annual leave payment, and judgment will be entered to that effect. The amount of recovery will be determined in further proceedings pursuant to Rule 38 (c). The petition, insofar as it relates to in-grade and statutory salary increases, is dismissed.
In accordance with the opinion of the court and on a memorandum report of the commissioner as to the amount due plaintiff, it was ordered September 5, 1958, that judgment for the plaintiff be entered for $2,150.02.