William Vincent VITARELLI

v.

UNITED STATES.

No. 283–59.

United States Court of Claims.

June 8, 1960.

Jones, Chief Judge, and Whitaker, Judge, dissented in part.

Clifford J. Hynning, Washington, D. C., for plaintiff.

Kendall M. Barnes, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

DURFEE, Judge.

This is suit for pay for the period of separation of an educational officer in the Office of Trust Territories of the Department of Interior which separation was terminated when he was reinstated on June 26, 1959. Plaintiff was discharged on the authority of the Act of August 26, 1950 [1] in the interest of national security. He returned to the United States from his position on Koror in the Caroline Islands after having been suspended without pay as a so-called "security risk" on April 10, 1954. He appeared before a security hearing board on June 22 and July 1, 1954. On September 2, 1954, the Secretary of the Interior removed plaintiff from his position. His family remained on Koror until Government transportation became available the following month when they, too, returned to the United States.

Plaintiff challenged the legality of his removal in the Federal courts and on June 1, 1959, the United States Supreme Court held that the dismissal was illegal. His reinstatement to his former position followed thereupon.

The same statute which authorized plaintiff's removal contains a *proviso* relating to persons who may be reinstated

1. 5 U.S.C.A. § 22–1.

by a department head after having been removed as a security risk. They are to be "allowed compensation for * * * the period of such suspension or termination in an amount not to exceed the difference between the amount such person would normally have earned during the period of such suspension or termination, at the rate he was receiving on the date of suspension or termination, as appropriate, and the interim net earnings of such person." Plaintiff has been paid his basic salary during the period of separation less his earnings from outside sources.

However, there are certain amounts which the plaintiff insists he would normally have received during this period because he was entitled to them on the date of discharge. Likewise, there is an item which plaintiff believes should be deducted from his interim earnings before they are credited against the back pay of which he was illegally deprived. Thus, the court must determine whether plaintiff should recover a 25 percent territorial post differential for the period of his unlawful removal, the annual leave which he would have accrued during that period, legislative and in-grade raises which he would have received had he not been removed, and per diem payments for the period during which he was away from his territorial post. And, we must determine whether he should be permitted to deduct from the interim earnings the legal costs he incurred in proving that he was wrongfully removed and in securing his reinstatement. We will treat these items in the order just suggested.

This court recently decided that a wrongfully separated firefighter should recover pay based on regular pay *and* overtime which overtime hours he would have worked had he remained on the job instead of being separated. Lockwood v. United States, D.C., 180 F.Supp. 579, 580. The compensation was based on Section 6(b) (2), Act of June 10, 1948, 62 Stat. 354, 355 [2] which permitted payment to the plaintiff at *the rate received on the date* of the separation. The court said, per curiam, "[T]he overtime rate applicable to the plaintiff's position as a GS–9 supervisory firefighter was just as much his rate of pay as the straight-time rate."

The reasoning of the Lockwood case as applied to 5 U.S.C.A. § 22–1 would seem to require that the plaintiff be paid the 25 percent differential as a part of his pay at "the rate he was receiving on the date of the suspension or termination * * *." However, defendant relies on, and plaintiff is confronted by, the holding in Kalv v. United States, 1954, 124 F.Supp. 654, 128 Ct.Cl. 207. In that case, the Civil Service Commission had ordered that plaintiff be reinstated as a War Department civilian on the grounds that his procedural rights under Section 14 of the Veterans' Preference Act of 1944, 5 U.S.C.A. § 863, had been violated when he was discharged. In addition to back salary, the plaintiff also claimed the 25 percent overseas differential which he had been receiving prior to his discharge. The statutory basis for that differential was the same as for the territorial differential at issue in this case.

In the Kalv case the court said that the only reasons for granting overseas differential were that the cost of living abroad was higher than at home, or that there were physical hardships and health hazards inherent in the differing environment. It concluded that an employee would be entitled to that differential, therefore, only at such times as he was actually and physically in the overseas area.

Territorial post differentials were first authorized by Section 207 of the Appropriation Act of 1949, as amended,[3] where either or both of the following conditions obtained: living costs substantially higher than in the District of Columbia and environmental conditions differing substantially from the United States proper which warrant additional compensation as a *recruitment incentive.*

2. 5 U.S.C.A. § 652(b) (2).

3. 62 Stat. 1205, 5 U.S.C.A. § 118h.

Executive Order 10000 [4] ordered the Civil Service Commission to designate as subject to the payment of differential areas which had environments substantially different from the United States where one or more of the following was true: (a) extraordinarily difficult living conditions, (b) excessive physical hardships, (c) notably unhealthy conditions.

Accordingly, the Civil Service Commission provided that a territorial post differential would be payable at posts having conditions of environment which differed substantially from those of the United States and warranted additional compensation as a recruitment incentive. It designated various areas pursuant to the regulations and the Caroline Islands was assigned a 25 percent differential as a recruitment incentive to induce employees to work and remain in that area in view of the environmental differences in climate, housing, sanitation, medical care, and intellectual and recreational opportunities. There is no evidence that this differential was in any way related to cost-of-living.

The defendant's position with respect to this item does not differ substantially from the court's position in the Kalv case. The defendant says that the concept of a recruitment incentive is not an independent one, but relates to the conditions of environment which warrant the incentive. It urges that if an employee is absent from the area of unfavorable conditions, he no longer has any right to the differential. We are inclined to think that the court was somewhat too narrow in its opinion in the Kalv case and that the concept of *recruitment* incentive was not given adequate consideration. The right to recovery in Kalv existed by virtue of a different and earlier statute than the one now before us. The same statute which applied in Kalv was treated in a considerably different manner in the Lockwood case.

The Government apparently considered it necessary to make the 25 percent differential a part of plaintiff's total compensation in order to induce him to come to, and remain at, an otherwise unattractive post. In this respect, it was not merely to compensate him for higher living costs or increased physical discomforts experienced only while he was actually on Koror. Wherever his location, whatever his condition, the offer of a higher salary to bring him and his skills to the Islands remained.

Certainly the plaintiff was entitled to the 25 percent differential as a recruitment incentive when he accepted this assignment and went to Koror in compliance with the orders of the defendant. It was a part of the consideration proposed by the defendant to induce him to accept this specific assignment. He was entitled to the differential on April 10, 1954, the date of the suspension of his services. It was part of the rate of pay he was receiving at that time. The amount plaintiff "would normally have earned * * * at the rate he was receiving on the date of suspension or termination * * *" includes the territorial differential. The statutory norm for computation of the compensation plaintiff might have expected to receive had he not been separated is met in allowing him to recover the territorial differential.

To the extent that the Kalv case fails to consider the incentive factor in differential pay and makes the differential conditional on physical presence in the overseas area, we think it cannot apply to the instant situation. The language of the statute viewed in the light of the Lockwood holding requires that territorial post differential be considered a compensable item.

█ It seems appropriate at this point to address ourselves to the significance of the language, "in an amount not to exceed the difference between" normally expected earnings and interim net earnings. We do not believe that this expression was intended to mean, nor that it may be interpreted to hold, that this court has any discretion in arriving

4. 5 CFR 301.1 to 301.63 (1949 Ed.).

at an amount less than the full compensation for each item of pay to which it holds the plaintiff entitled. The purpose of the language was to provide an exact method of computing the amount of recovery to which a plaintiff would be entitled and to insure that no more than that figure would be paid. Furthermore, there is nothing in the statute from which we can infer an intent that the compensation be anything less, nor is there any hint as to what criteria might be applied to arrive at what would be, in effect, a jury verdict.

As to accrual of annual leave, the Act of August 26, 1950, is silent; that is, it is not prohibited, as it is under the 1948 Amendment to the Lloyd-La Follette Act.[5] In Hynning v. United States, 1958, 141 Ct.Cl. 486 a plaintiff who had been removed and reinstated under the same statute as this plaintiff was permitted to recover both for the annual leave he would have accrued during the period of his removal as well as for 48 hours earned at the time of his removal, but not accrued due to the 30-day limit on such accruals. The court recognized that it could not require the defendant to credit the reinstated employee with any more than the 30 days permitted by 5 U.S.C.A. § 2062(c). Nevertheless, it felt compelled to presume that he would have taken his annual leave rather than have forfeited it had he not been prevented from taking any leave as result of the acts of the defendant. The court, therefore, granted plaintiff the monetary equivalent of the leave which would have accrued. It indicated, also, that it did not believe the limitation on accruable leave was intended by Congress to apply to persons separated under the circumstances of that case and, we might add, under the circumstances of this one, too. The reasoning of the Hynning case has been relied on by us in the past as it is now.

Plaintiff also claims per diem payments for the entire period during which he was away from his regular station, that is, from the date he was suspended and called back to the United States on April 10, 1954, to the date of his reinstatement, June 26, 1959. It is clear that he cannot recover per diem for this period because the statute limits recovery to items of pay which the reinstated employee was receiving on the date of his separation. This plaintiff was not being paid per diem either on the date of his suspension or on the date of his discharge. The Comptroller General, however, in deciding with respect to an employee suspended without pay and called back to the United States to answer charges under 5 U.S.C.A. § 22–1, just as was plaintiff, has said that the employee is considered to be traveling on official business until he has completed his appearance before the security board (No. B–119892, 33 Comp.Gen. 582).

Since the board hearing is provided for in the statute, he reasoned that an employee is on official business until he finishes his dealings with the board, even though he may then be in a suspended status. If the plaintiff was traveling on official business until he finished with the board, as we think he was, he should recover per diem payments for that period because he has satisfied the requirements of the per diem statute[6] in effect at the time of his removal, and still in effect now.

The final items which plaintiff seeks to have declared a proper factor in arriving at the rate of pay at which he is to be compensated are two legislative pay raises, enacted in 1955 and 1958, and the in-grade raises to which he would have been entitled had he been permitted to remain on the job. In the Hynning case, supra, such a claim was denied for the simple reason that the periodic step increases were not being paid to the plaintiff on the date of his discharge. The court emphasized that the phrase "would normally have earned during the period of such suspension or termination" must be read in context with the succeeding

5. 62 Stat. 354, 355; 5 U.S.C.A. § 652(b)(2).

6. 5 U.S.C.A. § 836.

phrase "at the rate he was receiving on the date of suspension or termination * * * ". Although Vitarelli might have expected to receive the in-grade promotions in the normal course of things had he remained in the employ of the defendant, he *was not* receiving them on the date of his discharge, and that is the fact that must be controlling in this situation.

Finally, plaintiff seeks to have the other factor in the equation, the interim earnings, reduced by the amount expended on legal fees required to have himself cleared of the charges and reinstated by the Government. He does not, however, claim any of the costs of pursuing his action in this court. He argues that net interim earnings should be analogized to the tax concept of net income and offers the familiar principle that a person who, on account of or in connection with, his business or profession, expends funds for legal fees in successfully defending a criminal or quasi-criminal proceeding may deduct those fees from income as an ordinary and necessary business expense. Plaintiff claims support for his theory that internal revenue precedents should apply and that the net earnings of 5 U.S.C.A. § 22–1 should be diminished just as net income would be by referring to Decision No. B–125362 of the Comptroller General (35 Comp.Gen. 268). It seems to us, however, that that decision merely said that all of the personal business activities of a wrongfully discharged employee should be considered in arriving at his actual earnings during his separation. Moreover, that decision, as well as Decision No. B–122555 (34 Comp. Gen. 382) states that the legal expenses incurred in seeking job restoration may not be deducted from interim earnings. Furthermore, the record does not convince us that plaintiff's action in vindicating himself before the courts was a necessary prerequisite to retaining his right to employment as a professional educator. For the foregoing reasons plaintiff will not be permitted to deduct his legal expenses from his interim earnings to arrive at interim net earnings.

We believe that the plaintiff should recover the 25 percent territorial differential, the monetary equivalent of the annual leave which would have accrued, and per diem payments· from the date of his suspension until the date that the statutory hearings were completed; we believe that he should not receive the periodic increases or legislative raises which occurred during his separation nor should he be permitted to exclude his legal fees from interim net earnings, and the petition will be dismissed as to those claims.

Accordingly, the plaintiff's motion for summary judgment will be granted in part and denied in part. The defendant's motion for summary judgment will be granted in part and denied in part. The amount of the judgment will be determined pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

LARAMORE and MADDEN, Judges, concur.

JONES, Chief Judge (dissenting in part).

I respectfully dissent.

Stripped of nonessentials, the primary issue in this case narrows to interpreting and finding the meaning of the applicable statute. The special provision, Act of August 26, 1950 (5 U.S.C.A. § 22–1), is as follows:

"* * * any person whose employment is so suspended or terminated * * * may, in the discretion of the agency head concerned, be reinstated or restored to duty, and if so reinstated or restored shall be allowed compensation for *all or any part of the period* of such suspension or termination in an amount *not to exceed* the difference between the amount such person would normally have earned during the period of such suspension or termination, at the rate he was receiving on the date of suspension or termination, as appropriate, and the interim net

earnings of such person * * *."
[Emphasis supplied.]

The plaintiff was reinstated pursuant to a court order after being discharged as a security risk. He has been paid his basic salary for the period of suspension, but at the time the question of his dismissal was raised, he was working in the Pacific islands. Consequently, he was receiving a post differential of 25 percent in addition to his basic salary. He claims to be entitled to this differential notwithstanding the fact that he was brought home and spent no part of the interim period outside of the continental United States.

I disagree with the interpretation which the majority has placed on this provision of the statute quoted above. It will be noted that there are at least two bases of discretion. The statute provides that on reinstatement the employee shall be allowed compensation "for all or any part of the period of such suspension." Following that provision it is stated that such compensation shall be in an amount "not to exceed the difference between the amount such person would normally have earned during the period of such suspension or termination, at the rate he was receiving on the date of suspension or termination * * and the interim net earnings of such person."

This statute has been construed by the majority as if the expression "or any part" and the expression "not to exceed" had been deleted from the statute. There must be a reason why these two limitations were inserted.

In addition, this court has already decided the question of an employee's entitlement to the differential payments during the period when he was not located abroad. The same question was before the court in Kalv v. United States, 1954, 124 F.Supp. 654, at page 656, 128 Ct.Cl. 207, at page 211 from which we quote:

"* * * Every provision of law and every executive order which we have been able to find which bears upon this subject indicates that the reason for the differential is either the increased expense of living abroad, or the difference in environment involving physical hardship, health or extraordinarily difficult living conditions.

"Plaintiff was abroad not a single day during the period for which he is claiming the additional compensation. All the reasons, therefore, for allowing the additional compensation are removed from the case, and this portion of the claim is left hanging on a bare technicality."

The same conclusion was reached in Casman v. United States, Ct.Cl., 181 F.Supp. 404. See order entering judgment of October 7, 1959.

The plaintiff in the instant case spent no time in the Pacific during the period of suspension.

For the double reason that I do not regard the 25 percent differential as being applicable when the plaintiff during the period involved was in the continental United States and that I regard the statute quoted above as not mandatory, but only as placing a ceiling on the amount an employee may recover, the plaintiff's claim for differential payment should be denied.

In the circumstances involved in this case I would dismiss plaintiff's entire petition.

WHITAKER, Judge (dissenting in part).

The majority opinion has much to support it, but I do not think it can stand unless we overrule the Kalv and Casman cases, supra.