Per Curiam :
This case was referred to Trial Commissioner Franklin M. Stone under Rule 47 (c) for a determination in further proceedings of the amount of recovery due plaintiff on entry of an opinion of the court on April 16, 1965, 170 Ct. Cl. 36. On February 15, 1966, the commissioner filed a report which includes therein his findings of fact and recommended conclusion of law. On March 30, 1966, the parties filed a stipulation of settlement wherein it was stipulated that the court should enter judgment in this case in favor of plaintiff and against defendant in the sum of $5,934.36, which is the same recovery as set forth by the commissioner in his recommended conclusion of law. Since the court agrees with the trial commissioner’s findings, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Judgment is therefore entered for plaintiff in the sum of $5,934.36 in accordance with this opinion and as stipulated by the parties.
OpinioN op Commissioner[1]
Stone, Commissioner: On September 18, 1955, plaintiff, then an enlisted man in the Navy, was arrested by civil authorities in Norfolk, Virginia, on a charge of “visiting a *789 place for immoral purposes” with another man. On September 19, 1955, plaintiff was convicted on said charge in the Norfolk, Virginia, City Police Court; but on a de novo trial before the Corporation Court in that city on October 14, 1955, he was acquitted. It appears from a stipulation filed by the parties on December 3, 1965, hereinafter discussed in detail, that plaintiff was represented by an attorney at both of the above-mentioned civil trials.
During the course of an investigation conducted by the Navy between the two court trials, plaintiff signed a statement admitting passive participation in an incompleted homosexual act with a civilian. Two days later plaintiff repudiated this statement. On October 17, 1955, plaintiff signed a form statement requesting and agreeing to accept an undesirable discharge “for the good of the service and to escape trial by general court-martial.” Thereafter, on November 12,1955, plaintiff was given an undesirable discharge from the Navy “by reason of unfitness.”
In November 1957, plaintiff had a hearing before the Board for Correction of Naval Eecords, at which he testified and submitted the results of a lie-detector test set forth in a letter dated February 15, 1956, from an examiner of the National Lie Detection Laboratories. Plaintiff was represented at this hearing by an attorney. On January 16,1958, the Board submitted to the Secretary of the Navy a report of the Board’s findings, decision, and recommendation, wherein it concluded that the issuance of the undesirable discharge was improper and unwarranted. The Board’s decision and recommendation were that the undesirable discharge be changed to an honorable discharge. However, in March 1958, the Secretary of the Navy, through an Assistant Secretary, approved only so much of this decision and recommendation as changed plaintiff’s undesirable discharge to a general discharge for unsuitability. Thereafter, on April 1, *790 1958, plaintiff was notified of the action of the Board, as approved.
On November 9, 1961, plaintiff timely brought this suit claiming the active duty pay and allowances of a chief boatswain’s mate, for the period from November 10,1955 through the date on which his then current term of enlistment would normally have expired.
In its decision of April 16,1965, the court concluded that plaintiff had been misinformed, misled, and wrongfully induced by improper means and in disregard of his rights, as well as controlling Navy policy, to request and accept an undesirable discharge. Therefore, the court held plaintiff’s discharge was void; that he was never validly separated from the service during his last enlistment; that he was entitled to recover his pay and allowances for the unexpired portion of his term of enlistment; and judgment was entered to that effect, the amount of recovery to be determined pursuant to Rule 47(c).
On December 3,1965, the parties filed an amended stipulation of facts[2] which reflects their agreement, on the basis of a General Accounting Office report, filed June 10, 1965, in response to a call, that the total amount of military pay and allowances due plaintiff for the period from November 10, 1955 to February 22, 1958, i.e., the unexpired portion of the term of plaintiff’s enlistment, is $11,677.59. The stipulation *791 also shows that the parties are in agreement that plaintiff’s civilian or interim earnings during said period total $5,743.23.
It would appear from the legal memoranda submitted by the parties that there is no disagreement, in general, as to the right of defendant to mitigate its liability by alleging an offset measured in terms of plaintiff’s interim earnings. However, the parties are not in agreement as to the amount of such earnings to be thus applied. The facts that give rise to the controversy here are set forth in the following portion of the stipulation filed December 3, 1965, supra-.
* * * tj:
3. The plaintiff paid his present counsel a fee of $400.00 in comiection with his successful petition to the Board for Correction of Naval Records which resulted in his undesirable discharge being changed to one under honorable conditions.
The plaintiff also paid an attorney’s fee of $200.00 to the attorney who represented him in the Police Court proceedings and the proceedings on appeal to the Municipal Court in the City of Norfolk, Virginia, and $100.00 for a lie detector test which he took in connection with his efforts to prevent his undesirable discharge from the Navy and to obtain a discharge under honorable conditions.
Plaintiff is also obligated to pay a fee to his present attorney for handling his case in the Court of Claims and the parties agree that a reasonable fee for such services is 33% per cent of any recovery obtained for plaintiff by way of judgment in the present cause.
_ It is further stipulated that the defendant reserves the right to challenge the validity of the above as items to be deducted from the civilian earnings of plaintiff * * *.
Plaintiff contends that the costs and expenses, indicated in the stipulation partially quoted above, were necessarily incurred by him in connection with his efforts to rectify the injury sustained by his illegal discharge. It is plaintiff’s position that such items of expenditure should be allowed as deductions from his civilian earnings, thereby enlarging his recovery here, and thus leaving him more nearly in the position he would have been, but for his unlawful discharge.
*792 At the outset, it should be noted that the application of plaintiff’s interim earnings to the reduction of his back pay award rests upon a principle which this court has frequently applied. Though on occasion referred to as a setoff or counterclaim, it is, more accurately speaking, nothing more than the common law duty which calls upon an injured party to exercise reasonable caution in an effort to avoid additional injury. As generally stated, this principle provides that those damages which a plaintiff might have avoided with reasonable effort and without undue risk, expense or humiliation, shall be deemed not to have been caused by the defendant and are therefore not to be charged against it. See Restatement, Contracts, § 336 (1) Comment (d). In addition, it also should be noted that a defendant’s right to rely upon this “duty to mitigate” does not depend upon express statutory authorization, rather, its functioning is as integrally related to the law of contracts as the notion of consideration itself. However, neither of the parties here may insist upon an expansion of this concept so as to encompass items which relate to a period antedating defendant’s breach. Both the defendant’s right to a setoff and the plaintiff’s duty to mitigate are defined in terms of the same fixed time period; like opposites of the same coin, they are inextricably bound together. Thus, plaintiff could no more seek to reduce defendant’s setoff by alleging expenses incurred prior to his discharge, than defendant could enlarge his set-off by seeking the inclusion of income which plaintiff earned prior to his erroneous dismissal. For this reason, so much of plaintiff’s claimed expenses as are represented by the sums spent for attorney fees in connection with the Norfolk civil proceedings may not be allowed, since it is clear that these expenses were not paid out of interim earnings. It follows, therefore, that all expenses which arose prior to plaintiff’s discharge that he seeks to include, may not be considered within the framework of the setoff question.
Proceeding from this point, attention is directed to those expenses which plaintiff incurred as a consequence of his application to, and hearings before, the Board for the Correction of Naval Records. Two items of expense are in *793 volved; namely: (1) the cost arising from a polygraph test,[3] the results of which were contained in a report plaintiff submitted in conjunction with his petition before the Correction Board, and (2) the attorney fees which he incurred incident to the pursuit of his administrative remedy before said Board.
At this juncture, consideration must be given to this court’s decision in Egan v. United States, 141 Ct. Cl. 1, 158 F. Supp. 377 (1958). It is upon this case that plaintiff places his primary reliance and which he cites in support of the proposition that the expenses here in question may be allowed. In Egan, supra, this court did allow a deduction of attorney fees from interim earnings; hence plaintiff contends that a like result should be reached in the suit at bar.
For purposes of clarification, it should be pointed out that plaintiff’s reference here is to the second of two actions which Egan prosecuted in this court. In the first suit, Egan v. United States, 123 Ct. Cl. 460, 107 F. Supp. 564 (1952), the plaintiff there was granted a back pay award to rectify an erroneous dismissal from his position as contact representative with the Veterans Administration, which position he had acquired after his dismissal from the military. In the second suit, Egan v. United States, 141 Ct. Cl. 1, 158 F. Supp. 377 (1958), Egan successfully sought recovery of back pay for his earlier military service after having previously secured the correction of his erroneous military discharge through the Board for the Correction of Naval Becords. Germane to the point here in issue is that the judgment in the first Egan case, represented earnings which had accrued prior to Egan’s corrected military discharge date — -hence this court properly regarded those earnings as interim or civilian earnings to be applied as a setoff against the military back pay award. However, in measuring the amount of these *794 earnings to be thus applied, Egan was permitted to deduct the reasonable attorney fees, necessary expenses, and costs incurred in obtaining judgment in his first suit.
Although the Egan case does not expressly state the fact, it is important to note that the allowance of plaintiff’s legal expenses there turned on the principle that they represented expenditures which were necessary to establish Ms right to the interim earnings which his employer, the Veterans Administration, had erroneously withheld. The litigation undertaken to secure that right may properly be regarded as an integral part of a plaintiff’s “duty to mitigate.” It is clear that if Egan had not brought suit to obtain his withheld pay, there quite obviously would have existed no fund or interim earnings upon which the Government could have based its claim for a setoff. Viewed in this light, it is proper to regard the legal expenses allowed as a cost incurred by the plaintiff pursuant to his duty to mitigate. Such is not the case here. There has been no showing in the instant suit that the attorney’s costs plaintiff incurred in connection with his administrative action before the Board for the Correction of Naval Records were necessary expenditures essential to his obtaining either the right to, or the benefit of, profitable civilian employment. Absent such a showing, these costs may not be allowed.
Moreover, insistence upon the demonstration of such a requirement is neither new nor novel. Similar requirements were voiced by this court in its decision in Vitarelli v. United States, 150 Ct. Cl. 59, 67, 279 F. 2d 878 (1960), wherein it was stated that “the record does not convince us that plaintiff’s action in vindicating himself before the courts was a necessary prerequisite to retaining his right to employment as a professional educator.” [4]
In addition to the Egan decision previously discussed, plaintiff has also referred to a number of decisions arising *795 under the National Labor Relations Act, which cases[5] discuss, inter alia, the allowance of back pay awards for employees whose discharge was the result of an unfair labor practice. These cases are cited for the proposition that one who is wrongfully discharged is entitled to be made “whole”, and it is urged that since similar considerations apply to the suit at bar, this court should not diminish the plaintiff’s recovery by compelling him to bear the burden with respect to the expenses here in question.
No issue may be taken with the proposition that the general measure of damages accruing to one whose employment contract has been wrongfully terminated should be, generally speaking, such amount as shall restore him to the position he would have occupied but for the breach. This court has never departed from that general premise. However, neither Egan, nor the labor law cases cited by plaintiff, support the proposition that a defendant’s right to a mitigation of its liability may be limited or otherwise reduced by compelling such party to bear either the cost of expenses arising prior to the breach of contract, or the attorney fees and other expenses incident to an injured plaintiff’s legal remedy, where such fees and expenses do not represent a necessary expense inowrred as a oonseguence of the plaintiff’s duty to mitigate.
On the basis of the foregoing, it is concluded that plaintiff may deduct neither the attorney fees nor the expense of the polygraph test, which he incurred in prosecuting his application before the Board for the Correction of Naval Records.
Turning now to the single remaining item, i.e., the attorney fees involved in the suit at bar, it is clear that these expenses have been expressly prohibited by statute. Section 2412 of 28 TJ.S.C. provides:

Costs

(a) The United States shall be liable for fees and costs only when such liability is expressly provided for by Act of Congress.
*796 (b) In an action under subsection (a) of section 1346 or section 1491 of this title, if the United States puts in issue plaintiff’s rigbt to recover, the district _ court or Court of Claims may allow costs to the prevailing party from the time of joining such issue. Such costs shall include only those actually incurred for witnesses and fees paid to the clerk.
(c) In an action under subsection (b) of section 1346 of this title, costs shall be allowed in all courts to the successful claimant, but such costs shall not include attorneys’ fee's. (June 25, 1948, ch. 646, 62 Stat. 973.)
On the basis of the foregoing, plaintiff’s requested allowance for the attorney fees involved in this present suit, must be denied. Moreover, no valid distinction can be drawn between a direct assessment of fees as opposed to an indirect assessment in the guise of a reduced setoff, for in either case, the statute clearly states that “Costs shall include only those actually incurred for witnesses and fees paid to the clerk.” The Government’s right to insist upon a setoff is as much a right as the protection which it derives from Section 2412, supra; it may not be put to the choice of exercising- one at the expense of another.
However, since the application of Section 2412 speaks only to those legal expenses pertaining to the suit at bar, it would not prohibit recognition of prior legal expenses. Hence, any reduction of the Government’s setoff resulting from allowances for such prior costs — as in Egan — would produce no conflict with the demands of the statute.
For the aforesaid reasons, plaintiff is entitled to recover the difference between his back pay and allowances, computed through the terminal date of his enlistment period, less the total amount of his civilian earnings since his illegal discharge.
CONCLUSION OF LAW
Upon the foregoing opinion which includes therein the findings of fact and which is adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover of and from the United States, the sum of five thousand, nine hundred thirty-four dollars and thirty-six cents ($5,934.36) and judgment is entered for plaintiff in that amount.

The opinion and recommended conclusion of law are submitted in accordance with an order of the court to file a recommendation under Rule 47(c) (2) as to the amount plaintiff is entitled to recover pursuant to the opinion and *789 judgment entered in this case on April 16, 1965. The facts are stated in the opinion.
The facts in this case, as found by the court, are fully set forth in the findings summarized in the opinion handed down by the court on April 16. 1965. However, the essential facts are briefly restated in this opinion in order that the questions to be resolved here may be better understood and considered in proper context.

 This stipulation was filed following a conference held on November 30, 1065, at which time the commissioner advised the parties that the wording in a stipulation filed by them on November 26, 1965, was such that it would be necessary for the commissioner to make findings of fact with respect to certain matters, and that this could not be done until additional evidence was introduced of record in some manner. In order to avoid the necessity of the commissioner taking further proof, the parties agreed to file an amended stipulation of facts containing revised language. After this had been done, the parties advised the commissioner, in writing, that they did not desire to file requested findings of fact, and would rely upon the facts set forth in their amended stipulation and legal memoranda.
Subsequently, by order filed December 14, 1965, the commissioner notified the parties that proof had been closed and that he would submit to the court an opinion incorporating, to the extent considered necessary, facts contained in the amended stipulation and in the opinion of the court rendered herein on April 16, 1(965, 170 Ct. Cl. 36, to which the parties might take exceptions and file briefs on the law as provided in Rule 58; and the parties were directed to proceed in accordance with said Rule, Rule 59 and Rule 60.

 The record is somewhat ambiguous with respect to the time that plaintiff incurred this expense. The record notes only that plaintiff submitted a report of this test along with his application to the Board for the Correction of Naval Records in November 1957. It is, of course, quite possible that the test itself was conducted at an earlier date, that is, in conjunction with plaintiff’s appearance before the Norfolk, Virginia, Corporation Court and hence prior to the execution of his discharge on November 12, 1955. Should this be the case, then this expense would not be allowable since it would fall outside the ambit of the interim earning period.

 Plaintiff was an educational officer in the Office of Trust Territories of the Department of Interior who was suspended without pay as a “security risk”. Hie challenged the legality of his discharge in the Federal Courts and his removal was ultimately deemed illegal by the united States Supreme Court. Thereafter, he brought suit in this court to recover the pay loss occasioned by his illegal separation.

 Nathanson v. NLRB 344 U.S. 25, 27 (1952) ; Social Security Bd. v. Nierotko, 327 U.S. 358, 364-65 (1946) ; NLRB v. Stilley Plywood Co., 199 F. 2d 319, 321 (4th Cir. 1952), cert. denied, 344 U.S. 933 (1953) ; Republic Steel Corp. v. NLRB, 311 U.S. 7, 12 (1940) ; and Consolidated Edison Co. v. NLRB, 305 U.S. 197, 235, 236 (1938). See also NLRB v. Melrose Processing Co., 351 F. 2d 693 (8th Cir. 1965).