FRANCISCO TORRES CARTAGENA, demandante y recurrente, *v.* CÁNDIDO OLIVERAS, ETC., ET AL., demandados y recurridos.

*Número:* R-65-248          *Resuelto:* 9 de junio de 1967

*Miguel A. Giménez Muñoz*, abogado del recurrente; *J. B. Fernández Badillo, Procurador General,* y *Adaljisa Díaz de Collazo, Procuradora General Auxiliar,* abogados de los recurridos.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El demandante, maestro de instrucción pública, fue separado de su cargo mediante formulación de cargos. Vistos, fue exonerado. El Secretario de Instrucción decretó su restitución con el pago de los sueldos correspondientes al período que estuvo suspendido. Mas al reclamar los sueldos no le fueron pagados. Radicó un *mandamus* para lograrlo. Se interpuso como defensa "que el demandado no tiene derecho a que se le paguen los sueldos dejados de percibir durante el tiempo que

estuvo suspendido toda vez que durante este período devengó ingresos los cuales son deducibles de los salarios que haya que restituirle". Y se estipuló que los ingresos devengados excedían los sueldos dejados de percibir.

El juez de instancia resolvió que "el derecho del demandante a recobrar salarios que dejó de devengar mientras estuvo suspendido de empleo y sueldo depende de si la posición que ocupaba en el Gobierno era la de un funcionario público . . . o la de un empleado público . . . ." que "si se trata de un funcionario público tiene derecho al pago de los salarios que dejó de percibir durante el período de su suspensión, ya que el pago del salario es inherente a la función pública que desempeñaba. Si se trata de un empleado público la relación entre él y el Gobierno es una de carácter contractual y no tendría derecho al pago de salarios." Concluye entonces "que un maestro de escuela es un empleado público" y que por tanto "la medida de los daños se determina a base de los sueldos dejados de percibir menos cualquier cantidad ganada por el demandante durante el período de su suspensión o que pudo haber ganado de haber ejercido razonable diligencia en la búsqueda de otro trabajo similar. 47 Am. Jur. Sección 145, página 402." Como el demandante había tenido ingreso que excedían de los sueldos que reclamaba declaró sin lugar la demanda. Accedimos a revisar esta sentencia.

La conclusión de derecho, base de la sentencia recurrida, tiene gran acogida en la jurisprudencia americana. Esto no obstante, nos parece arbitraria y sin base en la razón y en la justicia. Ver Anotación 150 A.L.R. 100 (1944). En algunas jurisdicciones estatales, si bien hacen la misma distinción, la aplican en forma distinta. Siguiendo el derecho consuetudinario sostienen, independientemente de la cuestión de la atenuación de daños, que un empleado puede recobrar el sueldo dejado de percibir durante el período de suspensión injustificado, mientras que al funcionario se le niega. *Mastrobattista* v. *Essex County Park Com.*, 215 A.2d 345 (N.J. 1965).

La Corte Suprema de New Jersey en el caso que acabamos de citar considera extensamente esta cuestión:

"Los casos de derecho común fueron discutidos en *De Marco* (21 N.J. 136, 121 A.2d 396) y no tienen que ser relacionados aquí. Establecieron distinciones entre cargos, puestos y empleos, las cuales fueron descritas en Miele como 'algo obscuras y más bien desafortunadas'. (31 N.J., en p. 347, 157 A.2d 306) y por Glasser como 'seriamente carentes de verdadera utilidad.' 6 Rutgers L. Rev. en p. 503. Condujeron a un trato diferente entre casos similares que es ahora difícil de justificar.

" .         .         .         .         .         .         .         .

"Los actuales conceptos de trato justo en las relaciones de empleo sugieren que personas en el servicio público que han sido suspendidas o destituídas previa la formulación de cargos que luego se determina son infundados deben ser resarcidas en cuanto sea posible; ellas deben de tener derecho no sólo a ser restituídas a sus deberes, sino que también no deben sufrir ninguna pérdida en sus emolumentos. Ésta es la trayectoria seguida por muchos estatutos y decisiones en la esfera federal y en los otros estados (ver *Vitarelli* v. *United States*, 279 F.2d 878, 150 Ct. Cl. 59 (Ct. Cl. 1960); *Mass* v. *Board of Education*, 61 Cal.2d 612, 39 Cal. Reptr. 739, 394 P.2d 579 (1964); *McKenna* v. *Commissioner of Mental Health*, 347 Mass. 674, 199 N.E.2d 686 (1964); *People ex rel. Bourne* v. *Johnson*, 48 Ill. App.2d 307, 199 N.E.2d 68 (1964), aff'd 32 Ill.2d 324, 205 N.E.2d 470 (1965); ver también las referencias en *McGrath* v. *Jersey City*, supra, 38 N.J., en p. 32, 183 A.2d 7); aunque estas decisiones de fuera del estado pueden dar lugar a algunas diferencias de opinión con referencia al grado que se debe aplicar la doctrina de atenuación (*Lower Merion Township* v. *Turkelson*, 403 Pa. 72, 169 A.2d 97 (1961), ellas no ofrecen ninguna base para la denegación de la paga que se hubiese devengado basada en distinciones técnicas entre cargos, puestos y empleos."

Establecido que no hay base racional para la distinción entre funcionarios y empleados en que se funda la sentencia recurrida, procede ahora considerar el mérito de la defensa interpuesta por el Estado con miras a nuestra ley y a la jurisprudencia que la interpreta.

Disponía la Sec. 5 de la Ley Núm. 312 de 1938—18 L.P.R.A. sec. 217—vigente a la fecha en que se le formularon cargos al recurrente que "[l]os maestros permanentes sólo podrán ser suspendidos o separados de sus cargos por justa causa, según lo dispuesto en y mediante procedimiento prescrito por la Ley Escolar Compilada y los reglamentos del Departamento de Instrucción Pública; *Disponiéndose, sin embargo,* que en los casos de inmoralidad o incapacidad física o mental dichos maestros será suspendidos sumariamente hasta tanto se celebre la vista del caso." Y la Sec. 42 de la Ley Escolar Compilada, aprobada el 12 de marzo de 1903—18 L.P.R.A. sec. 245—establecía en su parte pertinente que "[e]l Secretario de Instrucción Pública o el director escolar, suspenderá en sus cargos a los maestros por crueldad, inmoralidad, incompetencia, insubordinación o negligencia en el desempeño de sus funciones y podrá reponerlos o destituirlos cancelando sus certificados después de una investigación que se practicará, y en la cual el director escolar, podrá presentar una declaración y dichos maestros serán oídos en su propia defensa, bien de palabra o por escrito; . . .".

En *González* v. *Gallardo, Comisionado,* 62 D.P.R. 275 (1943) expresamos en relación con la Ley de Permanencia para Maestros, de la cual transcribimos antes la Sec. 5, vigente a la fecha en que se le formularon los cargos al recurrente, que:

"La Ley núm. 312 [de 1938, 18 L.P.R.A. sec. 214 et seq.] no es de origen puertorriqueño. Es producto de un modelo que se ha esparcido gradualmente a través de los Estados Unidos. 'La Ley de Permanencia para Maestros fue designada para llevar a cabo un propósito laudable. Si se pone en vigor sana e imparcialmente, los que propulsaron su adopción verán coronados sus esfuerzos constantes por los buenos resultados que inevitablemente surgirán. Fue la intención, *inter alia,* proteger a los buenos maestros de la juventud de una comunidad de someterse compulsoriamente a las influencias políticas de aquéllos que tienen el

poder de otorgar o retirarles el nombramiento; y de asegurarles empleo a tales maestros, después de un largo período de servicios satisfactorios para el público, prescindiendo de los vaivenes de la política o las preferencias de aquéllos que tienen en sus manos la administración de asuntos escolares.' (*Andrews* v. *Union Parish School Board*, 184 So. 574, 578 (La., 1938).) Se ha resuelto repetidamente que la Ley de Permanencia para Maestros fue aprobada, entre otros propósitos, para proteger a los maestros y por ende que tal Ley 'debe interpretarse siempre liberalmente a favor de aquéllos en cuya protección fue aprobada.' *Kennington et al.* v. *Red River Parish School Board*, 200 So. 514, 16 (La., 1940)."

Conscientes de este propósito el mismo día que resolvimos el caso de *González* en *Rosario* v. *Gallardo, Comisionado*, 62 D.P.R. 266 (1943) sancionamos la norma de pagarle los sueldos dejados de percibir durante el período de suspensión al maestro que se le formularan cargos y luego fuera exonerado a pesar que nada disponía la ley en cuanto a esto. Expresamos que "resolver lo contrario teóricamente le daría poder al Comisionado para perturbar a un maestro mediante una serie interminable de cargos, suspensiones y vistas sobre las cuales no se llegara nunca a conclusiones definitivas de inocencia y culpabilidad, pero en cada ocasión privándolo de su sueldo mediante el período de suspensión."

Este mismo razonamiento es de aplicación a la defensa interpuesta en el presente caso. El derecho a recibir el sueldo completo es la garantía que tiene el maestro para evitar que se le formulen cargos arbitrariamente. La mera formulación afecta la reputación de una persona. El legislador quiso proteger al maestro de esta posibilidad. Por otro lado el maestro necesita de un ingreso para poder sufragar los gastos de su subsistir. No puede pretenderse que se cruce de brazos a esperar el resultado final de los cargos que se le formulan. Ciertamente se destruiría la garantía que pagar el sueldo completo conlleva, si estableciéramos como regla que se des-

contaran los ingresos que obtuviera el maestro mientras estuvo suspendido ilegalmente.

Conociendo nuestra regla jurisprudencial expuesta en el caso de *Rosario,* la Asamblea Legislativa al reenactar una nueva ley en el año 1965—Ley Núm. 115 de 30 de junio de 1965—dispuso que "[s]i la orden de cancelación o suspensión del certificado o separación del maestro fueran revocadas por la Junta, el Tribunal Superior de Puerto Rico o cualquier otro Tribunal Apelativo el maestro que haya estado suspendido tendrá derecho a recobrar los sueldos que haya dejado de percibir durante el período de la suspensión." Como se observará no dispuso que se descontaría del sueldo lo obtenido por el maestro durante el tiempo que durare la suspensión. Pero si dispuso, siempre consciente de garantizarle la permanencia al maestro, que "si el procedimiento establecido por la presente ley se extendiere por más de noventa (90) días a partir de la fecha de la orden de cancelación, suspensión o separación, el maestro tendrá derecho, una vez transcurrido dicho período, a continuar devengando su sueldo hasta que la Junta emita su decisión, a menos que la dilación sea motivada por suspensiones a solicitud del maestro o por otras causas atribuibles a éste, según lo determine la Junta . . . ". Ver *State v. Tangipahoa Parish School Board,* 6 So.2d 696 (La. 1942) y Anotaciones, 145 A.L.R. 408, 432 (1943), 150 A.L.R. 100 (1944) especialmente la referencia que se hace a la pág. 113 a los casos de maestros.

En el Estado de California donde la ley, 33A West's *Annotated California Code,* sec. 1958, y la jurisprudencia, *Mass v. Board of Ed. of San Francisco Unified Sch. Dist.,* 394 P.2d 579 (1964), sancionan la norma de deducir los ingresos devengados en otras actividades del sueldo dejado de percibir prevalece la regla de que "No todos los emolumentos serían deducibles; por ejemplo, emolumentos por labor realizada durante el fin de semana o por la noche, que no hubiese sido incompatible con las funciones escolares, no son deduci-

bles. (*Beseman* v. *Remy* (1958) 160 Cal. App.2d 437, 445, 325 P.2d 578.) Por lo tanto, el peso debe descansar en la junta para probar cuales emolumentos en particular, si alguno, cualifican para minoración." *Mass*, escolio 12 a la pág. 590. Ver además *People* v. *Johnson*, 205 N.E.2d 470, 473 (Ill. 1965). Y en la jurisprudencia federal se establece por ley la deducibilidad de los ingresos obtenidos durante el período de suspensión. 5 U.S.C. § 652(b).

Nuestra Ley de Personal, Sec. 31—3 L.P.R.A. sec. 671— dispone que "[l]a Junta autorizará el pago total o parcial que hubiera correspondido al empleado o funcionario restituido a partir de la fecha en que fue destituido por la autoridad nominadora, o que se considere dicho tiempo como una suspensión de empleo y sueldo, o podrá recomendar cualquier otra penalidad razonable dentro de las disposiciones de esta ley". Interpretando esta disposición expresamos en *Soto Bosque* v. *Junta de Personal*, 85 D.P.R. 814 (1962) que:

"La lectura del precepto citado indica que en casos de destitución la Junta de Personal puede adoptar cualesquiera de las siguientes acciones: 1) confirmar la destitución; 2) ordenar la restitución; 3) revocar la destitución pero disponiendo una suspensión de empleo y sueldo porque la falta cometida no amerita el rigor de una destitución; 4) imponer cualquier otra penalidad procedente. Esto explica por qué la ley faculta a la Junta para autorizar el pago total de los haberes que hubiere devengado el empleado—cuando revoca la destitución—o el pago parcial— cuando ha impuesto una suspensión de empleo y sueldo por un término menor que el de la cesantía. El estatuto no autoriza a privar parcialmente de los sueldos cuando se ordena la restitución del empleado. Precisamente el propósito de ordenar el pago de los sueldos es restituir al empleado por los beneficios que dejó de percibir por la actuación injustificada de la autoridad nominadora."

Aunque en el escolio 2 expresamos: "Como de los autos no surge que el recurrente percibiera ingresos por otros conceptos durante el período de su cesantía, no es necesario discu-

tir ahora sobre la facultad de la Junta de Personal para reducir por este motivo los sueldos dejados de percibir. Véase, Anotación, 150 A.L.R. 100 (1944)."

Nos parece que la regla que en definitiva se adopte para aquellos empleados que no sean maestros, y que están protegidos por la Ley de Personal, debe pasar por el tamiz de la Asamblea Legislativa. Es a este cuerpo a quien en verdad compete, luego de oir los estudiosos del problema y considerar todos los factores envueltos, hacer la determinación final. Es una norma de política pública que debe establecerse mediante legislación.

*De lo expuesto surge que procede revocar la sentencia y declarar con lugar la demanda.*